IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00834-DDD-NRN

AMY WARDLAW

      Plaintiff(s),

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER,
a governmental entity;
TOWN OF OLATHE, a municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

      Defendant(s).

---

**GEORGETTE BLACK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

## I.     INTRODUCTION[1]

In the Amended Complaint ("Complaint") (ECF No. 43) Amy Wardlaw adds claims

against David Pearson and the Town of Olathe stemming from Pearson's April 4, 2021 assaultive

behavior.  But the theory of relief against Georgette Black in the Tenth Claim for Relief remains

one of § 1983 supervisory liability. To bolster her claims, Wardlaw relies heavily on the Montrose

Police Department Investigation ("MPD Investigation") into Pearson's assault of Wardlaw.

Compl., ¶¶ 24-107, 176-217; *see also* Exhibit A – MPD Investigation.[2] But, the Complaint does

---

[1] **Certificate of Conferral:** On July 21, 2023 the undersigned counsel conferred with counsel for Wardlaw, who objects to the requested relief.  The deficiencies are not correctable by amendment.

[2] This Court can consider the MPD Investigation without converting this motion to a Rule 56 motion, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997), given Wardlaw's reliance on the same, *see* Compl., ¶¶ 24-107, 176-217.

nothing more than include additional conclusions and bare assertions. The Complaint is bereft of any allegations that Black was aware Pearson ignored her directive not to go to WestCo, that Wardlaw was being harassed, or that anyone else at WestCo notified Black that Pearson was making unnecessary visits to WestCo. For the reasons detailed below, Black respectfully requests that this Court dismiss Wardlaw's claim against her.

## II.   STANDARD OF REVIEW

A complaint must contain enough allegations of fact, taken as true, "to state a claim for relief that is plausible on its face" to survive a Rule 12(b)(6) challenge. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted). A well-pled claim must demonstrate more than a sheer possibility that a defendant acted unlawfully—it is not enough to plead facts that are "merely consistent with" a defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quotation omitted). This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678. Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged— but has not "shown"—that pleader is entitled to relief. *Id.* at 679.

## III.   ARGUMENT

### A.   Black is entitled to qualified immunity.

#### 1.   Elements of claim: Qualified immunity.

Once a defendant asserts qualified immunity, the plaintiff must demonstrate the defendant violated a constitutional right and that the constitutional right was clearly established. *Martinez v.*

*Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The Court may determine which prong to address "first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 2.      Element not alleged: No constitutional violation.

Under § 1983 "government officials are not vicariously liable for the misconduct of their subordinates." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). To assert a claim on the basis of supervisory liability, a plaintiff must plausibly allege "an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* (quotation omitted). The plaintiff "must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." *Id.* (quotation omitted).

A claim for supervisory liability has two elements. First, Wardlaw must plausibly allege a claim that Pearson violated Wardlaw's constitutional rights. *Serna* at 1151. Next, Wardlaw must "demonstrate that [Black] *personally* violated her constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2023) (emphasis in original). This second element – the "affirmative link" – is comprised of three sub-elements: "(1) personal involvement, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). "[A] supervisor's mere knowledge of [their] subordinate's" conduct is insufficient to state such a claim. *Iqbal*, 556 U.S. at 677.

### a.      No underlying constitutional violation.

Wardlaw's Complaint adds two constitutional claims that Pearson violated her right to be free from an unreasonable seizure under the United States and Colorado constitutions. Compl., ¶¶

280-303. The remaining claims that Pearson acted "under color of state law" and violated her rights to equal protection and substantive due process are unchanged.  Pearson, Pacheco, and Olathe have all tackled the deficiencies in Wardlaw's efforts to plausibly allege any underlying constitutional violation. For efficiency's sake, Black incorporates these renewed arguments, and underlying rationale, as if fully set forth herein. Fed.R.Civ.P. 10(c).

### b.      No "affirmative link."

#### i.      Personal involvement.

The preliminary component of the analysis is whether the supervisor "actively participated or acquiesced in the constitutional violation." *Serna*, 455 F.3d at 1152.  This may take several forms: the supervisor's personal participation in the underlying conduct, their exercise of control or direction, or their failure to supervise. *Id*. Ultimately, supervisory liability "must be based upon active unconstitutional behavior" and "more than a mere right to control employees." *Id*. (quotation omitted).

Wardlaw couches her claim against Black as one of a failure to supervise, train, or take some other action that would have prevented Pearson from harassing her in April 2021. Compl., ¶¶ 332-34. The Tenth Circuit has previously criticized this theory in circumstances involving an allegation of sexual assault. *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998) held that, in the training context, even if the training was "less than adequate, we [were] not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." *Id*. at 1308.

The same rings true here. Sometime in 2019,[3] Black learned that Pearson had inappropriate physical contact with someone at WestCo, directed him not to go to the dispatch center unless it was necessary, and if he was there, not to touch anyone. Compl., ¶¶ 26-30,101-04. It seems self-explanatory under the circumstances, like in *Barney*, that no further supervision or instruction would be necessary. There is no allegation that Black was made aware of incidents between Pearson and WestCo dispatchers between her counseling Pearson in 2019 and the April 2021 assault that is the subject of the Complaint.

Instead, Wardlaw focuses on the fact that Black – as an officer, not a sergeant with supervisory responsibilities (and fellow WestCo dispatcher) – witnessed an incident in 2019 when Pearson grabbed Wardlaw's knee. Compl. ¶¶26-29. Black then allegedly told Wardlaw that she would handle Pearson's behavior. *Id.*, ¶29. Wardlaw now claims, in conclusory fashion, that each time she saw Black, she would complain about Pearson. *See id.*, ¶31. This is the sort of bare assertion that that amounts to a formulaic recitation of a constitutional claim that are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681.

Even if the Court considers this allegation, it hardly nudges Wardlaw's effort to tie Black to Pearson's conduct from conceivable to plausible. Though Black directed Pearson not to visit WestCo, his doing so is not unlawful, in the constitutional sense. And Wardlaw merely alleges Pearson engaged in "inappropriate behavior" while he was there, an allegation that encompasses the sort of "wide swath" of general conduct, again, some of which may not have been unlawful, that is insufficient to state a claim here. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Indeed, Wardlaw's characterization of Pearson's conduct reinforces the absence of Black's

---

[3] This occurred in 2019 per the MPD Investigation. *See* Exhibit A, pp 7 and 15-16.

knowledge after witnessing the knee grabbing incident.   The only other conduct Wardlaw

described was a time "Pearson brushed against her breast when looking at a record on her computer

together." Exhibit A, p 7. This occurred about six months prior to the April 2021 incident and

Wardlaw "dismissed that contact as accidental in nature," without any indication she informed

anyone, including Black.   Wardlaw even acknowledged to investigators that before the April 2021

incident she had not seen Pearson at WestCo in at least "two or three" months, reinforcing the fact

that Pearson was following the directive from Black not to frequent WestCo. Exhibit A, pp 5 and

16.

Next, Wardlaw points to complaints made by other WestCo staff and other Olathe officers

to try and state her claim against Black. This effort fails for two reasons. First, careful attention to

the allegations concerning complaints made by WestCo staff reveals that while they apparently

had concerns about Pearson between the time Black counseled him in 2019 and April 4, 2021, they

never voiced those concerns to anyone until the MPD initiated its investigation. Compl., ¶¶73-94.

For example, Roland Hutson, Olathe's Mayor and a part-time dispatcher at WestCo, observed an

incident between Pearson and another dispatcher in the summer or fall of 2020 and told Pearson

not to touch anyone. *Id.*, ¶¶92-94; *see also* Exhibit A, p 8. Even though Hutson was aware of

Black's directive to Pearson from the year before, there is no indication he reported this incident

to anyone, again, including Black. Compl., ¶ 95; Exhibit A, p 8. Further, Nathan Compton, a

WestCo dispatcher, relayed to the MPD that he was aware of Pearson's behavior and that someone

at Olathe Police Department ("OPD") counseled Pearson, *see* Exhibit A, p 12-13, but the

Complaint does not allege Compton ever reported anything to Black.  Instead, Compton and other

dispatchers discussed Pearson's behavior and concluded that Compton would admonish Pearson. *Id.*, p 12. Compton did admonish Pearson about a month before the April 2021 incident, but none of this was relayed to Black beforehand. *Id.*

Second, Wardlaw alleges Black was aware that Pearson had a propensity to harass females. The Complaint alleges Pearson harassed other females at the OPD, in his prior employment at Ridgeway State Park and the San Miguel Sheriff's Office, and in his private life. The allegations about Pearson's lewd behavior toward his colleagues at OPD does not indicate that he was harassing anyone at WestCo such that Black should have realized Pearson was disobeying her earlier instructions. The Complaint is silent about Black's role in hiring Pearson (indeed, Pearson was already OPD officer in 2019 when Black was still a line-level officer, *see* Compl., ¶¶ 26-28), and makes clear that other incidents were revealed, again, after the MPD initiated its investigation following Wardlaw's criminal complaint in 2021, *see id.*, ¶¶194-217. Consequently, the Complaint has not plausibly alleged Black was on notice of Pearson's continued unlawful conduct toward Wardlaw.

### ii.    Causation.

"The second element requires" that Wardlaw show Black "alleged action(s) caused the constitutional violation." *Schneider*, 717 F.3d at 768. "A plaintiff must establish the requisite causal connection by showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* (internal quotation and alterations omitted).

For the same reasons addressed above in § III(A)(2)(b)(i), no well-pled allegations demonstrate Black set in motion a series of events that she knew or should have known would

result in Pearson violating Wardlaw's constitutional rights.  In *Schneider*, the Tenth Circuit held that to meet this element the plaintiff, who was sexually assaulted by a police officer, at her home, would need to have shown that the officer's sergeant: (1) knew about other complaints against the officer; (2) would have taken "specific" actions; and (3) these actions would have prevented the rape.  *Id*. at 779.  Black already warned Pearson, yet he still committed a criminal act against Wardlaw.  *See id*. at 780.  "Mere speculation that something would have been done to prevent" Wardlaw's injury in April 2021 is not sufficient to establish causation.  *Id*.

### iii.    State of mind.

Finally, Wardlaw does not allege facts demonstrating Black acted with a culpable state of mind.  *Id.* at 769. Precisely what state of mind is required for individual liability depends on the specific claim at-issue. *Iqbal*, 556 U.S. at 676. The applicable state of mind here is somewhat unclear. In *Schneider*, the parties agreed deliberate indifference was the appropriate standard and the Tenth Circuit merely adopted this rationale.  *Schneider*, 717 F.3d at 769 ("… no one challenges the use of the deliberate-indifference standard. We therefore assume without deciding that deliberate indifference is the applicable state of mind.").  While this sets the floor for the analysis, *Iqbal* arguably requires more. There, the Supreme Court explained that a claim for supervisory liability focusing on intentional discrimination required the plaintiff plead "sufficient factual matter to show" the supervisory defendants adopted a detention policy "for the purpose of discriminating on account of race, religion, or national origin." *Iqbal*, 556 U.S. at 677.  Simply put, the plaintiff had to plead facts showing the supervisors intended to discriminate again him in their adoption of certain policies and practices – an incredibly high bar.  Nonetheless, "mere negligence" is not enough. *Serna*, 455 F.3d at 1154.

Given Wardlaw has alleged underlying substantive due process and equal protection theories, the applicable mental state for the supervisory liability claim would require that Black's conduct arise to the level of "conscience shocking" in the substantive due process context, *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008), or that Black intended to discriminate against Wardlaw in how she counseled Pearson. *Barney*, 143 F.3d at 1312.  At the very least, under the already stringent deliberate indifference standard, applied to all of her various constitutional theories, Wardlaw must plead sufficient facts showing Black "consciously fail[ed] to act when presented with an obvious risk of constitutional harm which [would] almost inevitably result in constitutional injury of the type experienced by the plaintiff" in April 2021.  *Burke v. Regalado*, 935 F.3d 960, 997–98 (10th Cir. 2019).

Whether the applicable mental state is couched as deliberate indifference, conscious shocking, or intentional, the Complaint contains nothing but conclusory allegations as to failure to train, supervise, and discipline Pearson. *See* Compl. ¶¶ 332-35. Again, the allegations that would have put anyone on notice that Pearson continued to harass dispatchers at WestCo after Black spoke with him were only revealed after Wardlaw complained to the MPD.  *See* § III(A)(2)(b)(i).

In *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992), a pre-*Iqbal* decision, the Tenth Circuit explained that a plaintiff who merely shows a supervisor "should have known" that a subordinate "was violating someone's constitutional rights and it is not established that the supervisor actually had such knowledge, the plaintiff will not have established a deliberate, intentional act by the supervisor to violate constitutional rights." *Id*. at 1399.  This, at best, demonstrates the supervisor was "negligent in not observing what he should have seen," *id*.,  and

9

falls short of the requisite "deliberate indifference" showing necessary to meet this final element

of, *id.* ("The Supreme Court has made it clear that liability under § 1983 must be predicated upon

a '*deliberate*' deprivation of constitutional rights by the defendant.") (italics in the original).

Likewise, in *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1288 (10th Cir. 2019), the

Tenth Circuit reiterated *Barney's* maxim that "it is not a plainly obvious" that the consequence of

a "deficient training program would be the sexual assault of inmates." *Id.* (citation omitted).

*Waller* acknowledged that given the regular law enforcement duties of a police office, it was not

patently obvious to train officers not to rape women.  *Id*. at 1288 (citation omitted). Given the

overlap between the standard applicable to municipal liability and supervisory liability claims, *see*

*Schneider*, 717 F.3d at 769-70 (discussing "state of mind" standards for both theories), the same

logic applies here: It is not plainly obvious that a supervisor's deficient training or oversight of a

subordinate police officer, given their law enforcement duties, would be the sexual assault of

anyone. Nonetheless, here, Black did not have information indicating any need to further counsel

or train Pearson, much less know that an obvious consequence of not taking some further action

created a substantial risk of constitutional injury.

### 3.      Element not alleged: No clearly established law.

Even if the Court disagrees, Wardlaw cannot show constitutional jurisprudence, as of April

4, 2021, would have counseled Black that she had to take additional steps to prevent future

harassment – beyond instructing Pearson not to go to the dispatch center and not to touch

dispatchers if he had to be there – when the operative complaint does not plausibly allege she was

aware Pearson defied her instructions.

For the law to be "clearly established," there must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction. *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017). It is not enough that the rule is suggested by then-existing precedent; the precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). Even a "hint as to what the law may be cannot substitute for clearly established law." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1213 (10th Cir. 2017). Otherwise, the rule is not one that "every reasonable official" would know. *Wesby*, 138 S.Ct. at 590. The contours of the rule must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted" – *i.e.*, the legal principle clearly prohibits the officer's conduct in the particular circumstances before him. *Id*. This requires a high "degree of specificity," *id*. (quotation omitted), and is, thus, a demanding standard meant to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When applying the clearly established law test, "courts must not define the relevant constitutional right 'at a high level of generality.'" *Perry*, 892 F.3d at 1123 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotation and alterations omitted).

This standard is further refined in the supervisory liability context. In *Perry,* the Tenth Circuit held that a plaintiff must identify a case where a supervising official acting under similar circumstances violated the constitutional protection at issue under a supervisory liability theory.

892 F.3d at 1123 ("…Perry must 'identify a case where an offic[ial] acting under similar circumstances as [the supervisor] was held to have violated' the Constitution." (quotation omitted)).

Here then, Wardlaw must show precedent as of April 2021 established that a supervisor violates substantive due process, equal protection, or Fourth Amendment principles when they have counseled the subordinate and do not personally direct or have actual knowledge of a subordinate's continuing harassing behavior. In the substantive due process context, there is no decision that would have notified Black her alleged conduct as a supervisor reached the "high level of outrageousness" necessary to satisfy substantive due process. *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998). "[G]uideposts for responsible decisionmaking [sic] in this unchartered area are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quotation omitted). For precisely that reason, the Supreme Court has instructed lower federal courts, pursuant to "judicial self-restraint," to "exercise the utmost care whenever … asked to break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Consequently, there is no jurisprudence that would have cemented that Black's particular conduct violated substantive due process prior to Pearson's harassment of Wardlaw in April 2021.

Next, in the equal protection context, in 1992, in *Woodward*, the Tenth Circuit examined the state of the law in 1989 and concluded it was clearly established that a direct claim for sexual harassment was actionable on equal protection grounds. 977 F.2d at 1397. The Tenth Circuit held the subordinate officers' sexual harassment of the plaintiff violated the Equal Protection Clause, but granted qualified immunity to the supervisory officials (who did not have actual knowledge of the harassing behavior) on clearly established law grounds and never reached the merits of the

supervisory liability claim.  *Id*. at 1398.  Seven years later, in *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999), the Tenth Circuit concluded that teachers at a school in Denver, who learned of a janitor continuing sexually assaultive behavior toward a minor and even instructed the student not to tell her mother about at least one instance in which she was battered and sexually assaulted, were sufficiently aware of the ongoing conduct and that their continued silence and refusal to notify law enforcement or take other steps to prevent such behavior was actionable under the Fourteenth Amendment.  *Id*. at 1244-45 and 1251-52. As *Murrell* explained, the basis for its ruling was anchored to cases where a supervisor or employer knowingly and consciously acquiesced in an employee's sexual harassment. *Id. at 1250.*

But *Murrell* has no applicability here given the absence of any well-pled, non-conclusory allegation that Black knew Pearson was continuing to cause Wardlaw a constitutional injury.  No case from the Tenth Circuit holds a supervisor to the standard Wardlaw asks this Court to impose here.  The state of the applicable Fourteenth Amendment jurisprudence remains murky as it relates to the particular set of facts pled concerning Black.

Finally, the Tenth Circuit has yet to consider the application of the Fourth Amendment to a sexual assault by an officer on an individual who is not under arrest, let alone in the context of a claim of supervisory liability. *See D.G. v. City of Las Cruces*, 2015 WL 13665421, at *7 (D.N.M. March 25, 2015).[4] Other Circuit Courts have concluded the Fourth Amendment is not applicable to sexual assaults by an officer on an individual who is not in custody. The Fifth Circuit held that a consensual welfare check did not turn into an unlawful seizure when a police officer sexually

---

[4] Pearson and Pacheco discuss the inapplicability of the Fourth Amendment. *See* ECF Nos. 60 and 61 at pp 6-7 and pp 6-8.

assaulted the plaintiff. *Tyson v. Sabine*, 52 F.4th 508, 515-17 (5th Cir. 2022). In *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997), the Fourth Circuit concluded the Fourteenth Amendment, rather than the Fourth Amendment, was the correct constitutional protection where "the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct." Likewise, the Second Circuit concluded "[t]he Fourth Amendment is not the proper source of [the plaintiff's] constitutional right because [the officer's] objectionable conduct occurred outside of a criminal investigation or other form of governmental investigation or activity." *Poe v. Leonard*, 282 F.3d 123, 136 (2nd Cir. 2002).

For these reasons, the law cannot be said to have been developed sufficiently to have informed Black that the steps it is alleged she took would expose her to liability – under any constitutional theory – in her capacity as a supervisor.

WHEREFORE, Black respectfully requests this Court dismiss Wardlaw's claim against her with prejudice and grant any other relief it deems appropriate.

Respectfully submitted this 24th day of July, 2023.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ David J. Goldfarb*

David J. Goldfarb
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  djg@bhgrlaw.com

*Attorney for Defendant Georgette Black*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), containing 3,890 words, inclusive of footnotes.

*s/ David J. Goldfarb*

_____

David J. Goldfarb

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2023, I electronically filed the foregoing **GEORGETTE BLACK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

Azra Taslimi
Felipe S. Bohnet-Gomez
Rathod | Mohamedbhai LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
at@rmlawyers.com
fbg@rmlawyers.com

Jonathan Abrahamson
Julia Nikolaevskaya
Kissinger & Fellman, PC
3773 Cherry Creek North Drive, Suite 900
Denver, CO 80209
jonathan@kandf.com
julie@kandf.com

Marni Nathan Kloster
Nicholas C. Poppe
Nathan, Dumm & Mayer, PC
7900 East Union Avenue, Suite 600
Denver, CO 80237
mnathan@nbdmlaw.com
npoppe@ndm-law.com

Peter H. Doherty
Lasater & Martin, P.C.
5251 DTC Parkway
Suite 800
Greenwood Village, CO 80111
Peter@LasaterandMartin.com

*s/ Cheryl Stasiak*

Cheryl Stasiak

16