IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   23-CV-00834-DDD-NRN

AMY WARDLAW

    Plaintiff,

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER, a governmental entity;
TOWN OF OLATHE, municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

    Defendants.

## TOWN OF OLATHE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

Defendant, Town of Olathe ("Town"), by and through its attorneys at Nathan Dumm & Mayer P. C., hereby submits the following Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and, in support, states as follows:

### CERTIFICATE OF CONFERRAL

Undersigned counsel hereby certifies they have conferred with Plaintiff's counsel, who indicated this Motion is opposed with respect to all federal claims. Plaintiff agrees to dismiss her state law claim against the Town. In light of the allegations, even as once amended, and the applicable law regarding sexual harassment/assault under the Fourteenth Amendment, the defects in Plaintiff's Amended Complaint are not correctable by further amendment.

## INTRODUCTION

Most of the Defendants in this case filed motions to dismiss the original complaint, largely given the fact that Defendant Pearson ("Pearson") did not act under color of state law when he allegedly assaulted Plaintiff. In response, Plaintiff filed an amended complaint adding new allegations, seemingly in an attempt to try to counter the Motions. [ECF 43, ¶¶ 44-55].

The problem with the new allegations in the Amended Complaint, however, is they largely focus on *Plaintiff's* job duties and her beliefs that WestCO's policies required her to cooperate with police officers. [*See id.*, ¶ 47 (discussing her job description and apparent requirement to "communicate and interact with all levels of personnel…")]. Yet these allegations do nothing to address whether Pearson acted under color of state law. Rather, that requires an analysis of *Pearson's* authority as a law enforcement officer and whether he was exercising that authority at the exact moment he allegedly assaulted Plaintiff. On this point, the Amended Complaint is just as lacking as its predecessor.

Because the Amended Complaint fails to allege Pearson exercised his authority as a police officer or was otherwise acting under color of state law when he allegedly assaulted Plaintiff, and thus did not commit a constitutional violation in the process, the Town cannot be liable under *Monell*.

Finally, Plaintiff agrees her state law claim against the Town should be dismissed, as section 13-21-131 of the Colorado Revised Statutes does not provide a direct cause of action against municipalities.

## PERTINENT FACTS

There are limited facts set forth in Plaintiff's Amended Complaint that are pertinent to the narrow issues raised in this Motion:

1. Plaintiff worked for WestCO, not the Town, as a supervisor. WestCO is a separate governmental entity. [ECF 43, ¶¶ 4-9, 12 & 38].

2. Pearson was employed by the Town in its police department ("OPD") on or about April 4, 2021. [ECF 43, ¶¶ 15 & 24].

3. On or about April 4, 2021, Pearson entered the WestCO Dispatch Unit while Plaintiff was the supervisor in charge. [ECF 43, ¶ 38].

4. The Dispatch Unit is not open to the public. [ECF 43, ¶ 40].

5. Plaintiff alleges that Pearson could access WestCO because he was a police officer and that she did not feel she could ignore him because her job description at WestCO required her to communicate with police officers and WestCO dispatchers "were expected to be acquainted with the officers of the user agencies that WestCO worked with." [ECF 43, ¶¶ 44-55].

6. Plaintiff later acknowledges, however, that WestCO could have prevented Pearson from having any access, even as a police officer. [ECF 43, ¶ 128].

7. Pearson was alleged to have been told he was not to go to WestCO. [ECF 1, ¶¶ 99 & 104].

8. Despite Pearson not being employed by WestCO and Plaintiff being the supervisor in charge at the time for WestCO, Plaintiff let Pearson in, allowed him to hug her and then Pearson communicated about Plaintiff's marital problems, which is clearly of a personal, non-law enforcement nature. [ECF 43, ¶¶ 57-58].

3

9. Plaintiff contends there was a brief inquiry about the dispatch system and whether the Town could use the same abbreviations as the County. [ECF 43, ¶¶ 59].

10. Plaintiff then alleges Pearson assaulted her while looking at the computer entries on her screen. [ECF 43, ¶¶ 60-63].

11. Plaintiff elbowed Pearson away from her in protest and a WestCO employee ordered Pearson out of WestCO. [ECF 43, ¶¶ 64-65].

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. However, a plaintiff's legal conclusions, even when couched as factual allegations, or mere conclusory statements need not be considered. *Iqbal,* 556 U.S. at 678–79; see *Twombly,* 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## LEGAL ARGUMENT

   *i.   Monell liability must be based on a constitutional violation.*

To plead a valid theory of *Monell* liability, a plaintiff must allege with factual support the following elements:

(1) a constitutional violation committed by one or more of its employees;

4

> (2) a policy, custom, practice, official decision, or failure to train that is attributable to the municipality;
>
> (3) facts that show the aforementioned practice of the municipality caused the deprivation of the plaintiff's constitutional rights.

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002). In the present case, Plaintiff cannot establish the first element of *Monell* liability: the presence of an underlying constitutional violation.

Plaintiff's federal claims seek relief on grounds of equal protection, substantive due process, and seizure under the Fourth Amendment. [ECF 43, ¶¶ 267-330]. Thus, to sustain a claim against the Town, Plaintiff must first demonstrate that Pearson's alleged harassment/assault constituted plausible constitutional violations. But as set forth below, Pearson's alleged conduct does not conform to any established or recognized constitutional violation – thus rendering her *Monell* claims against the Town not viable as a matter of law. Furthermore, it is not alleged that Pearson was acting under color of state law when he allegedly assaulted Plaintiff.

> ii.     *Pearson did not commit a constitutional violation because his harassment did not abuse his authority as a government official.*

Plaintiff asserts two claims against Pearson under the Fourteenth Amendment, namely for violation of her right to equal protection and substantive due process. She also now asserts a third claim against him under the Fourth Amendment for unlawful seizure. Yet all three claims share a common key element: to be viable, a plaintiff must show that the governmental official

5

abused some authority or control he held over the plaintiff. In the absence of such abuse of authority, the official's conduct, while perhaps deplorable, lacks a sufficient nexus to the misuse of power such that the Constitution is implicated. The Town will take each of Plaintiff's theories against Pearson in turn.

    *a.*  *Plaintiff has no viable equal protection claim.*

Beginning with equal protection, the Tenth Circuit has already issued an opinion rejecting an equal protection violation on essentially the same facts as this case. *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992). In *Woodward*, several emergency dispatchers alleged that they were subjected to sexual harassment by a police officer and undersheriff, both of whom were not employed by the same agency as the dispatchers. *Id*. at 1394. The dispatchers alleged a violation of their right to equal protection, asserting that the officers' conduct violated the Fourteenth Amendment. *Id*. at 1400. The Tenth Circuit rejected the dispatchers' theory of constitutional liability because the officers were neither the dispatchers' supervisors nor employers, and thus they did not "have control or authority over Plaintiffs." *Id*. The Tenth Circuit held that for sexual harassment to be actionable under the Fourteenth Amendment, a defendant must leverage or assert the use of his "state authority or position….[otherwise] it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act of sexual harassment." *Id*. at 1401 (internal citations omitted); *see also Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) ("The parties agree, however, that in

order to establish the state action necessary to support a § 1983 claim, defendant McAdoo had to be plaintiff's supervisor or in some other way exercise state authority over her.").[1]

In the present case, Plaintiff does not allege that Pearson was her supervisor, nor does she allege that he was exercising his authority as a police officer over her when the alleged harassment took place. Instead, as alluded to in the introduction, Plaintiff alleges her job description and WestCO's policies required her to cooperate with law enforcement agencies. [ECF 43, ¶¶ 44-55]. But administrative policies related to WestCO do not establish that *Pearson* held state authority over her; rather, they simply show what is otherwise obvious: as her employer, WestCO had the ability to set guidelines for her employment. Those policies, however, do not extend some authority or supervisory control over Plaintiff such that Pearson could leverage that authority to harass her, as is required under Tenth Circuit case law. Indeed, Plaintiff's emphasis on what powers her employer allegedly held, as opposed to what authority Pearson possessed, is the exact opposite analysis required by Tenth Circuit precedent. *Noland*, 39 F.3d at 271.

Perhaps sensitive to this vulnerability in her constitutional claims, Plaintiff alleges in a purely conclusory manner that Pearson could only access the dispatch center "because of his position as an Olathe police officer" and given his position, she "reasonably believed she was not free to ignore him." [ECF 43, ¶¶ 40, 45]. As to the former allegation, the mere fact that Pearson could access the dispatch center *generally* does not establish he was exercising his authority over her *specifically* once within WestCO. Indeed, the same argument could and perhaps was made in

---

[1] While the Tenth Circuit's ruling in *Woodward* was in the context of the second prong of qualified immunity, the Tenth Circuit has not deviated from its holding that sexual harassment must be tied to an official's abuse of authority to be actionable under the Fourteenth Amendment. Thus, the context of the court's ruling is irrelevant for purposes of this case. *See Noland*, 39 F.3d at 271.

7

*Woodward*, yet absent the use of authority to actually carry out the harassment, the plaintiff lacked a clear nexus to a constitutional violation. *See Woodward*, 977 F.2d at 1401.

As to the latter allegation, Plaintiff's statement that she felt she could not ignore Pearson is not only conclusory, but is not supported by any factual allegations in the Amended Complaint. She does not allege, for example, that Pearson held any supervisory authority over her, nor does she allege anything empowered Pearson to dictate her work or otherwise control her conduct. Furthermore, she does not allege that Pearson was exercising any legitimate law enforcement authority over her. Just the opposite, she claims he initially discussed personnel matters and then was asking administrative questions about computer codes when he assaulted her; a task that has nothing to do with Pearson's authority – over anyone – as a police officer for the Town. Indeed, belying any contention that Pearson was exercising his formal authority as a law enforcement officer is Plaintiff's allegation that she "elbowed Officer Pearson away" from her upon his alleged physical contact. [ECF 43, ¶ 65]. Plaintiff's physical resistance to Pearson's actions, while perhaps legitimate given the allegations of misconduct, dispels any notion that he was exercising law enforcement authority over Plaintiff or that she reasonably believed she had no choice but to submit to his status and authority as a police officer. Plaintiff's belief is further belied by her allegation that Pearson was ordered out of the dispatch center by another civilian after the alleged assault – a directive that is inconsistent with an officer who is exercising his authority as conferred to him by state law. [*Id*., ¶ 66].

In the absence of Pearson using his coercive power as a police officer to leverage his ability to harass Plaintiff, his conduct, while allegedly deplorable, does not "establish the state action necessary to support a § 1983 claim…" *Noland*, 39 F.3d at 271 (dismissing portion of

sexual harassment claim under the Equal Protection Clause for lack of state authority over plaintiff).

                b.      *Plaintiff has no substantive due process claim.*

A similar analysis plays out with respect to Plaintiff's substantive due process claim against Pearson. It is well established in the Tenth Circuit that a substantive due process claim involving an assault by a government official is actionable only to the extent the abuse is tethered to "the assaulting official's use of official authority to force the victim to submit…" *Williams v. Berney*, 519 F.3d 1216, 1223 (10th Cir. 2008). In other words, the government actor must employ his authority "as an instrument of oppression in a manner that shocks the conscience." *Koessel v. Sublette Cnty. Sheriff's Dept.*, 717 F.3d 736, 750 (10th Cir. 2013) (internal citations and quotations omitted). For example, a school administrator who used his authority as an administrator to extort sexual favors from a teacher was liable on a constitutional substantive due process claim because he leveraged his discretionary government power to facilitate the abuse. *Williams*, 519 F.3d at 1223-24 (citing *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997)).

But as with her equal protection theory, Plaintiff cannot sustain a due process claim because Pearson was not exercising any legitimate state authority when he allegedly assaulted her. Instead, he inquired about her personal life and then was asking administrative questions about a computer system (*see* ECF 43, ¶ 59), which Plaintiff does not allege is within Pearson's job duties as a police officer, much less that he was using the coercive power of his position to assault her. Rather, according to the Amended Complaint, Pearson simply assaulted Plaintiff. As established by Tenth Circuit precedent, those facts are insufficient to bring Pearson's conduct within the ambit of a substantive due process claim. *See Koessel*, 717 F.3d at 750.

      *c.*  *Plaintiff was not seized pursuant to the Fourth Amendment.*

  In what amounts to her newest allegation, Plaintiff alleges she was seized by Pearson under the Fourth Amendment. [ECF 43, ¶ 283]. But for similar reasons, she fails to allege a viable cause of action because Pearson never exercised authority against her such that the Fourth Amendment was implicated.

  The allegations in her Amended Complaint that most directly bear on this issue are her statements that Pearson got close to her because he wanted to view abbreviations in a computer system. That inspection allegedly gave Pearson the opportunity to assault the Plaintiff. [ECF 43 ¶¶ 59-63]. But those allegations do not create an inference that Pearson was exercising his authority to engage in a custodial arrest or otherwise seize Plaintiff's movements through means intentionally applied. Indeed, such an inference is immediately dispelled based on the allegations in the Amended Complaint, as upon being touched by Pearson, Plaintiff elbowed him away and then Pearson was ordered out of dispatch. [*Id.*, ¶¶ 65-66]. Law enforcement officers who are engaging in an arrest do not simply walk away after the "arrestee" elbows them and a citizen orders them out of the area.

  As well briefed by Pearson in his motion to dismiss, the state of current precedent directs that Fourth Amendment claims based on sexual assault are not viable unless they are tethered to a government actor investigating a crime. [*See* ECF 61, pp. 6-7 (citing *D.G. v. City of Las Cruces*, No. 14-CV-368 MCA/WPL, 2015 WL 13665421, at *7 (D.N.M. Mar. 25, 2015))]. As set forth in the Amended Complaint, Pearson was inquiring about computer abbreviations. He was not detaining or arresting Plaintiff based on his authority as a law enforcement officer. Indeed, he was not even *pretending* to exercise such authority when he spoke with the Plaintiff.

10

Thus, Plaintiff's final constitutional claim fails for lack of a demonstrable connection to his use of authority as a police officer, specifically a lack of connection to any pending investigation or law enforcement function.

        iii.    *For similar reasons, Pearson was not acting under color of state law, removing his conduct from constitutional liability.*

As an argument in the alternative, or perhaps better stated as a supplement to its previous argument, the Town also argues that Pearson was not acting under color of state law, as is necessary to sustain a claim under 42 U.S.C. § 1983.

A threshold requirement for Plaintiff's claims against the Town is that the allegedly unconstitutional conduct must be attributable to the state, hence the acting under color of law requirement. See *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). This component requires the official to have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks omitted). "It is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez,* 55 F.3d 488, 493 (10th Cir. 1995). In that regard, a court must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties," not just a single fact. *David v. City and Cnty. of Denver*, 101 F.3d 1344, 1352-53 (10th Cir. 1996) (*citing Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)).

For this requirement, the Tenth Circuit has required some form of legal authority over the injured party. For example, an off-duty law enforcement officer who detained a potential shoplifter by flashing his badge was held to have acted under color of law because he utilized his

11

authority as a police officer to accomplish the stop which formed the basis for the claim. *Lusby v. T.G. & Y. Stores Inc.*, 749 F.2d 1423 (10th Cir. 1984). On the other hand, a teacher who sexually abused a student during summer vacation was held not held to have acted under color of law because despite the teacher's authority, there was no nexus between the school and the assault. D.*T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cnty., Okl.* 894 F.2d 1176 (10th Cir. 1990). Similarly, a janitor who sexually assaulted a student on school grounds did not act under color of law because his actions in leading the student into a dark classroom were not attributable to any authority he held over the student. *Jojola*, 55 F.3d at 494.

Consequently, even on-duty law enforcement officers do not always act under the color of law. *Bacon v. Allen*, 2008 WL 4642330, at *7-8 (D. Kan. Oct. 17, 2008). It is therefore "the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Jojola,* 55 F.3d at 494; see also *David,* 101 F.3d at 1353 ("It is the plaintiff's burden to plead and prove a nexus between the officer's conduct and the officer's authority under color of state law.").

In looking at the most applicable case law, in *Haines v. Fisher*, 82 F.3d 1503 (10th Cir. 1996), several (apparently bored) police officers decided to prank a gas station attendant by faking a robbery. While one officer remained as a lookout, the other officer donned a ski mask and a trench coat, as well obtained an M-16 rifle – all of which belonged to the department. The lookout officer then drove the other officer to the gas station in a department vehicle. The officer then "robbed" the store by forcing the clerk to the ground and firing several blank rounds out of the rifle. In an ensuing lawsuit by the clerk, the Tenth Circuit held that "[t]his is not a case in

which the defendants 'exercised power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law.'" *Id.* at 1508 (*quoting West v. Atkins*, 108 S. Ct. 2250, 49 (1988)). Rather, their actions were "in the gambit of their personal pursuits[,] are not under color of state law and do not impose liability." *Id.*

When applying the law to the facts alleged in the Amended Complaint, the allegations do not support that Pearson acted under color of state law. The fact that Pearson was a police officer and was on duty at the time of the incident is insufficient under *Haines*. Further, even if Pearson was only allowed into the communications center because of his position as an officer, that does not establish that Pearson held authority over the Plaintiff. In fact, just the opposite is demonstrated, as Pearson's supervisor stated he was not supposed to be in the communications center and was ultimately ordered to leave after he allegedly assaulted Plaintiff. [ECF 43, ¶¶ 65, 99].

A district court decision out of New Mexico helps further the Town's position. In *T.G. v. Bd. of Cnty. Comm'rs of Rio Arriba,* No. 19-1116, 2020 WL 6075662 (D.N.M. Oct. 15, 2020), a sheriff's deputy decided to engage in some horseplay and pointed his taser at a corrections officer who was manning the sally port at the jail. Intending to display an arc of electricity in the general vicinity of the officer's groin, the deputy instead pulled the trigger, not realizing the taser was in dart mode. *Id*. at *6. The taser prongs launched from the device and into plaintiff's groin. *Id*. In the ensuing lawsuit, the officer argued the deputy was acting under color of law because "[he] would not have let a private citizen into the jail," essentially making the argument that but for the deputy's authority, the deputy would never have entered the sally port and the assault would have never occurred. *Id*. at *16. The district court found this argument unavailing, holding

13

that "the question is not what Defendant Gallegos was doing five minutes or even ten seconds before the tasing incident occurred. The question is the nature of the act Defendant Gallegos committed toward Plaintiff, at the moment in time he committed it." *Id*. at *17 (internal citations omitted). The fact that the deputy was authorized to enter the sally port, when others would not be permitted to do so, did not control whether the deputy was acting pursuant to his authority when he discharged a taser at the officer. The court held that the deputy did not act under color of law at the moment he pulled the trigger because there were no official duties involved in "[t]his purely private altercation" between the officers. *Id.* at *19.

The same is true here. Even if Pearson gained access to the communications center by virtue of his authority as a police officer, such authority did not extend to his alleged assault of the Plaintiff – nor did Plaintiff plead facts that would establish a connection between his authority and the alleged assault.

Thus, in addition to failing to state a constitutional claim, Plaintiff has failed to establish that any of the conduct at issue was taken under color of state law – further requiring dismissal of her claim against the Town.

      *iv.*    *Plaintiff's state law claim against the Town should be dismissed.*

Plaintiff asserts an unlawful seizure claim against the Town under Colorado Revised Statute 13-21-131. [8th Claim for Relief, ¶¶ 291-303]. Plaintiff agrees this claim should be dismissed, as section 131 only provides a cause of action against a law enforcement officer – it does not extend to the law enforcement officer's employer. *Ditirro v. Sando*, 520 P.3d 1203, 1209 (Colo. App. 2022).

**CONCLUSION**

WHEREFORE, the Town respectfully requests the Court dismiss Plaintiff's Amended Complaint with prejudice, or at least the State Law claim per Plaintiff's conferral, award the Town its costs and grant such other and further relief as the Court deems proper.

DATED this 31st day of July, 2023.

<div style="text-align: right">

s/*Nick Poppe*
Marni Nathan Kloster
Nicholas C. Poppe
NATHAN DUMM & MAYER P. C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
ATTORNEYS FOR THE TOWN OF OLATHE

</div>

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

    I hereby certify that on 31st day of July, 2023 I electronically filed the foregoing **MOTION TO DISMISS** using the CM/ECF system which will send notification of such filing to the following:

Azra Taslimi
Felipe Bohnet-Gomez
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
at@rmlawyers.com
fbg@rmlawyers.com
*Attorneys for Plaintiff*

James Kadolph
3800 E Mexico Avenue, Suite 700
Denver, CO 80210
(303) 320-0509
jkadolph@sgrllc.com
*Attorney for Western CO Regional Dispatch Center*

Jonathan M. Abramson, Esq.
Yulia Nikolaevskaya, Esq.
Kissinger & Fellman, P.C.
3773 Cherry Creek N. Drive, Suite 900
Denver, CO 80209
jonathan@kandf.com
julie@kandf.com
(303) 320-6100
*Attorneys for Defendant Pacheco*

Peter H. Doherty
5251 DTC Parkway Suite 800
Greenwood Village, CO 80111
peter@lasaterandmartin.com
(303) 551-6280
*Attorney for Defendant Pearson*

David J. Goldfarb
Berg Hill Greenleaf Ruscitti LLP
1217 Pearl Street
Boulder, CO 80302

djg@bhgrlaw.com
(303) 402-1600
*Attorney for Georgette Black*

*s/Nick Poppe* ________________________________
Marni Nathan Kloster
Nicholas C. Poppe
Attorneys for Defendant
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
MNathan@ndm-law.com
NPoppe@ndm-law.com