IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00834-DDD-NRN

AMY WARDLAW,

    Plaintiff,

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER, a governmental entity;
TOWN OF OLATHE, a municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

    Defendants.

**Plaintiff's Response to Defendant Pearson's July 24, 2023 Motion to Dismiss [ECF No. 61]**

Defendant Pearson's motion to dismiss should be denied.

### INTRODUCTION

Officer David Pearson relied on his status as a police officer, and his need discuss official police business, in order to gain access to Ms. Wardlaw and sexually assault her.

In the middle of the night on April 4, 2021, Olathe Police Officer David Pearson used his state-derived authority to access the Western Colorado Regional Dispatch Center ("WestCO"), which is closed to the public. He was on duty, in uniform, and brought along his trainee.

It was not the first time Officer Pearson went to WestCO. Like other police officers, he regularly visited the dispatch center in the course of his official duties. But Officer Pearson also regularly mixed official business with sexual predation. He routinely harassed and inappropriately touched the female dispatchers at WestCO. Despite widespread complaints,

Officer Pearson's sexual harassment continued unabated. His conduct, and the impunity with which he carried it out, was possible only because of his official status and authority.

Emboldened by having gotten away with it for so long, Officer Pearson decided to go even further. He deliberately abused his official status and authority to facilitate a sexual assault of Ms. Wardlaw, ultimately grabbing Ms. Wardlaw and groping her breasts—all during an inquiry supposedly related to his work as a police officer, and to which Officer Pearson surely knew Ms. Wardlaw was compelled to respond. Though he "denies" (at 3) this conduct, Officer Pearson pleaded guilty to criminal charges based on it.

But Officer Pearson's conduct was not just criminal. As the Seventh Circuit has recently reaffirmed in a substantially similar case, "sexual assault by an official acting under color of law violates the constitutional rights of the victim." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023). Ms. Wardlaw "has plausibly alleged facts supporting liability under the theories of the Fourteenth Amendment Equal Protection Clause, the Fourth Amendment, and the Fourteenth Amendment Due Process Clause" as well as under their Colorado constitutional counterparts. *Id.* at 760. The motion to dismiss should be denied.

## FACTUAL BACKGROUND

Plaintiff Amy Wardlaw worked as a police dispatcher for the Western Colorado Regional Dispatch Center ("WestCO"). FAC ¶ 1. WestCO provides dispatch services for several jurisdictions, including the town of Olathe, which exercises some ownership and control of WestCO. FAC ¶¶ 6-7, 9-14.

Defendant Officer Pearson was a police officer for Olathe. FAC ¶ 22. Officer Pearson engaged in repeated sexual harassment of Ms. Wardlaw while on duty, including intentional and unwanted touching of her leg, knee, shoulder, and breast. FAC ¶¶ 25-36. Officer Pearson also similarly harassed other female dispatchers at WestCO. FAC ¶¶ 74, 77.

2

While on duty on the night of April 4, 2021, Officer Pearson and his police trainee went to the WestCO offices, where Ms. Wardlaw was also working. FAC ¶¶ 37-38. Officer Pearson wore a police uniform, badge, and firearm. FAC ¶ 39. Because the dispatch center is not open to the public, Officer Pearson was only able to enter because of his official position as a police officer for Olathe. FAC ¶¶ 40-41.

Officer Pearson made his way to Ms. Wardlaw's office, which was locked. FAC ¶ 42. Officer Pearson induced her to let him enter by claiming he needed to speak to her about official business related to his position as an Olathe officer. FAC ¶¶ 43-44.

Ms. Wardlaw did not want to interact with Officer Pearson and felt uncomfortable being alone with him. FAC ¶¶ 45, 56. But because of his official position as an Olathe officer, Ms. Wardlaw had no choice but to let Officer Pearson into her office. FAC ¶¶ 45, 54-55.

Ms. Wardlaw's job required her to communicate and interact with Olathe officers. FAC ¶¶ 47-48. As part of her job, Ms. Wardlaw was required to maintain good relationships with WestCO's member agencies, including the Olathe Police Department, and to get to know their officers. FAC ¶¶ 49-51. As part of the performance of their police duties, officers routinely came to WestCO on official business. FAC ¶ 53. And it was in his capacity as an Olathe police officer that Officer Pearson had authority to access WestCO and ask Ms. Wardlaw questions relating to official business. FAC ¶ 52.

Upon entering Ms. Wardlaw's office, Officer Pearson gave her an unwanted "side hug," and inappropriately asked about her personal life. FAC ¶¶ 57-58. Then, under the guise of asking about official business, Officer Pearson induced Ms. Wardlaw to show him certain records on her computer. FAC ¶ 59-60. While Ms. Wardlaw's back was turned, Officer Pearson approached from behind her. FAC ¶ 61. Once Officer Pearson was close enough, he wrapped both his arms

3

around Ms. Wardlaw and forcibly groped her breasts. FAC ¶ 63. Ms. Wardlaw froze and was stunned that a police officer had grabbed her in such a manner. FAC ¶ 64.

Once she regained her composure, Ms. Wardlaw elbowed Officer Pearson away in protest. FAC ¶ 65. Traumatized by Officer Pearson's brazen sexual assault, Ms. Wardlaw crawled into a fetal position in her chair, shaking and noncommunicative, for approximately one hour. FAC ¶¶ 67-68.

## ARGUMENT

### I.   Officer Pearson acted under color of state law.

Officer Pearson briefly invokes (at 4 & 6) Ms. Wardlaw's alleged "fail[ure] to allege state action" in his arguments for dismissal of Ms. Wardlaw's Equal Protection and Fourth Amendment claims. It is not clear whether Officer Pearson's perfunctory references to "state action" actually raise the argument that he is not liable because he did not act under color of law, as the substance of his arguments, and the authorities he invokes, concern the respective substantive constitutional standards, not whether Officer Pearson acted under color of state law. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). By contrast, Defendant Pacheco actually developed the argument. (Pacheco Mot. 7-9). To the extent that Officer Pearson argues that he did not act under color of law, Ms. Wardlaw refers this Court to her response to Defendant Pacheco's motion.

### II.  Officer Pearson is not entitled to qualified immunity on Ms. Wardlaw's Section 1983 claims.

Qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he

4

confronted." *Pauly v. White*, 814 F.3d 1060, 1074 (10th Cir. 2016) (quotation marks omitted). Qualified immunity is a fair warning standard and is not "a scavenger hunt for prior cases with precisely the same facts." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[T]he salient question . . . is whether the state of the law . . . gave respondents fair warning that their alleged treatment of Hope was unconstitutional.").

Because Ms. Wardlaw "has plausibly alleged facts supporting liability under the theories of the Fourteenth Amendment Equal Protection Clause, the Fourth Amendment, and the Fourteenth Amendment Due Process Clause," and because those violations were clearly established, Officer Pearson is not entitled to qualified immunity with respect to the § 1983 claims against him.[1] *Hess*, 72 F.4th at 760.

### A. Equal Protection

#### 1. Ms. Wardlaw states an Equal Protection claim.

An official violates the Equal Protection Clause when he "abuses his governmental authority to further his own sexual gratification." *Shepherd v. Robbins*, 55 F.4th 810, 817 (10th Cir. 2022) (citing *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999)). Contrary to Pearson's assertions (at 5), the fact that Officer Pearson "was not a supervisor" and "was employed by a separate agency" do not preclude liability under the Equal Protection Clause. As *Whitney* made clear, an Equal Protection claim may be brought by a private citizen who does not work for or with the harassing official at all. *Whitney v. State of New Mexico*, 113 F.3d 1170

---

[1] Officer Pearson Does not seek qualified immunity—and it does not apply—with respect to Ms. Wardlaw's state law claims. *See* C.R.S. § 13-21-131(2)(b). Additionally, because the question of whether Officer Pearson's conduct was under color of state law is "an element of § 1983," it is not part of the qualified immunity analysis. *Sturdivant v. Fine*, 22 F.4th 930, 935 (10th Cir. 2022).

(10th Cir. 1997). Instead, a plaintiff need only plausibly allege that the defendant officer exercised "some governmental authority" to further the harassment. *Johnson*, 195 F.3d at 1217.

The facts Ms. Wardlaw has alleged are more than enough to meet that standard. It was Officer Pearson's state-derived authority that permitted him and his trainee to access WestCO while he was on duty. It was sometimes necessary for Officer Pearson to visit the dispatch center on official police business. And once inside, Officer Pearson claimed to be on official business, and Ms. Wardlaw and others reasonably perceived him to be. This caused Ms. Wardlaw to let him in her locked office, even though Officer Pearson had routinely harassed her. As alleged, Ms. Wardlaw was compelled to let him enter due to Officer Pearson's official status, and it is reasonable to infer that Officer Pearson knew that, and purposefully took advantage of this power imbalance. Under the circumstances, Officer Pearson abused his authority to sexually assault and harass Ms. Wardlaw, and therefore violated the Equal Protection Clause.

The Seventh Circuit's recent decision in *Hess*, 72 F.4th at 757 is also instructive. There, the defendant police officer sexually harassed and groped a female high school student who joined him on a "ride along." The officer was not the plaintiff's supervisor, and the officer did not purport to arrest or criminally investigate the plaintiff. Nonetheless, the Seventh Circuit had no trouble concluding that the officer's conduct was an "abuse of his position of authority" that plausibly violated the Equal Protection Clause." *Id.* at 761. So too here. Indeed, Officer Pearson's conduct involved the abuse of substantially more government authority, because unlike the officer in *Hess*, Officer Pearson used his authority to gain access to Ms. Wardlaw against her wishes.

Ms. Wardlaw has therefore stated an Equal Protection claim against Officer Pearson.

6

### 2. Ms. Wardlaw's Equal Protection right was clearly established.

It has been clearly established at least since *Johnson*, 195 F.3d at 1218, "that to abuse any one of a number of kinds of [state-derived] authority for [the] purpose of one's own sexual gratification . . . would violate the Equal Protection Clause." This rule applies with "obvious clarity" to Officer Pearson's conduct here. *United States v. Lanier*, 520 U.S. 259, 271 (1997). Any reasonable officer would have understood that a sexual assault made possible by his state-derived authority would violate the Equal Protection Clause.

*Shepherd* is inapposite. There, a divided panel of the Tenth Circuit granted qualified immunity to an officer to the extent that his harassment of the plaintiff occurred in the context of a "*commercial* relationship" relating to a contract for towing services, as opposed to a *governmental* relationship. 55 F.4th at 819 (emphasis added). *Shepherd* nonetheless reinforces that "the law was clearly established at the time that [the defendant] could not use his state-derived authority as a police officer to engage in sexual harassment." *Id.* at 820. And that is precisely the thrust of Ms. Wardlaw's allegations here—that Officer Pearson abused his authority *as a police officer* to assault her, not that he leveraged a *commercial* relationship to do so.

Ms. Wardlaw's Equal Protection right to be free from Officer Pearson's sexual assault is also established by "the clear weight of authority from other jurisdictions." *Mayfield v. Bethards*, 826 F.3d 1252, 1259 (10th Cir. 2016). The "common ground" of authority from other circuits clearly shows that "sexual assault by an official acting under color of law violates the constitutional rights of the victim." *Hess*, 72 F.4th at 758 (citing cases). In addition, this is also an "obvious case" where "a body of relevant case law" is not necessary." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Officer Pearson's conduct was plainly unlawful, and any reasonable

7

officer would have known that wholly unjustified sex discrimination violated the Equal Protection Clause. Thus, Officer Pearson is not entitled to qualified immunity.

### B. Fourth Amendment

#### 1. Ms. Wardlaw states a Fourth Amendment claim.

A Fourth Amendment seizure "can take the form of physical force . . . that in some way restrains the liberty of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (citation and quotation marks omitted). As the Supreme Court has emphasized, the "laying on of hands or application of physical force to restrain movement is a seizure." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). "The touching of the person" is enough to effect a seizure. *Torres*, 141 S. Ct. at 996. Consequently, "[a]n officer who sexually assaults someone while acting under color of law has seized the victim for Fourth Amendment purposes." *Hess*, 72 F.4th at 763. This is because "[s]exual assault intrudes into bodily security and is quite literally a 'seizure,' restricting freedom of movement even if briefly." *Id.* at 763.

When Officer Pearson deliberately wrapped his arms around Ms. Wardlaw and "grasp[ed] with a hand" on Ms. Wardlaw's breasts, he applied physical force to her body and objectively manifested an intent to restrain her movement. *Torres*, 141 S. Ct. at 997. Consequently, Officer Pearson seized Ms. Wardlaw, however briefly. And "brief seizures are seizures all the same." *Id.* 999. Officer Pearson's seizure of Ms. Wardlaw was plainly unreasonable because "[n]o governmental interest is served by a state actor sexually assaulting anyone." *Hess*, 72 F.4th at 764.

Officer Pearson's sole argument (at 6), that "available case law requires action by a person in custody in a criminal context," lacks merit. To the contrary, the Fourth Amendment applies even to those seizures undertaken "on a whim, for no reason at all." *Soldal v. Cook Cty.*, 506 U.S. 56, 69 (1992). "The focus of the Amendment is [] on the security of the person, not the

identify of the searcher or the purpose of the search. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1205-06 (10th Cir. 2003)

Accordingly, Ms. Wardlaw has plausibly stated a claim for unlawful seizure.

### 2. Ms. Wardlaw's Fourth Amendment right was clearly established.

*Torres* was decided before Officer Pearson's assault and gave him fair notice that his assault of Ms. Wardlaw would constitute a seizure under the Fourth Amendment. And ample precedent clearly established that such a wholly unjustified seizure is unreasonable. *E.g., Terry v. Ohio*, 392 U.S. 1, 21 (1968) (a seizure must be "justified at its inception" by "specific and articulable facts"). Where a seizure cannot plausibly serve any legitimate purpose, it is clearly and obviously unreasonable. *See Hess*, 72 F.4th at 764 (explaining it is appropriate to impose "virtually *per se* Fourth Amendment liability" under such circumstances).

Moreover, the right not to be fondled by a police officer is also "so 'obvious' that it could be deemed clearly established even without materially similar cases." *Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018). Officer Pearson is therefore not entitled to qualified immunity with respect to Ms. Wardlaw's Fourth Amendment claim.

### C. Substantive due process

### 1. Ms. Wardlaw states a substantive due process claim.

Officer Pearson asserts (at 9-10) that his sexual assault of Ms. Wardlaw did not violate her substantive sue process rights because she lacked any recognized interest in bodily integrity, and because it "does not meet the standard of shocks the conscious [*sic*] standard." He is wrong on both counts.[2]

---

[2] The cases cited by Pearson (at 10-12) are inapplicable because they involved only "nonsexual touching." *Roberts v. McLean Cty. State's Attorney's Office*, No. 1:19-cv-01316, 2020 U.S. Dist. LEXIS 71543, at *2 (C.D. Ill. Apr. 23, 2020); *see also Scatorchia v. Cty. of Suffolk,* No. CV-01-

9

First, sexual assault by a government official violates an individual's substantive due process right to bodily integrity. *See Abeyta v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) (holding a teacher's sexual assault violated student's "bodily integrity"); *Hess*, 72 F.4th at 763 ("Case law has established a fundamental right to bodily integrity that includes the right to be free from sexual assault."); *Haberthur v. City of Raymore*, 119 F.3d 720, 723 (8th Cir. 1997) ("[T]he courts of appeal have recognized that the right may be violated by sexual fondling . . . .") (citing cases). Consequently, Officer Pearson's sexual assault of Ms. Wardlaw plausibly violated her substantive due process right to bodily integrity.

Second, Officer Pearson's conduct demonstrates such "a degree of outrageousness and a magnitude of potential or actual harm" that it "shocks the conscience" and violates the Due Process Clause. *Uhlrig v. Harder*, 64 F.3d 567, 573-74 (10th Cir. 1995). "The ultimate standard . . . is whether the challenged government action shocks the conscience of federal judges." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (citation omitted). The egregious facts of this case—an intentional, gratuitous sexual assault by a state actor—satisfy this standard. As the Supreme Court has explained, "conduct intended to injure in some way unjustifiable by any government interest"—like Officer Pearson's conduct here—"is the sort of official action most likely to rise to the conscience-shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

"An officer's sexual assault while acting under color of law is conscience-shocking." *Hess*, 72 F.4th at 766. Indeed, and even more specifically, the Tenth Circuit has held that an official "purposefully and knowingly using physical force against Plaintiff by touching her

---

3119-TCP-MLO, 2006 U.S. Dist. LEXIS 5617, at *3 (E.D.N.Y. Jan. 24, 2006) ("Plaintiff admits that the touch was not 'groping or anything like that.'").

breasts . . . deeply offends contemporary standards of decency and therefore violates the Eighth Amendment." *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (noting that sexual assault "is unquestionably repugnant to the conscience of mankind") (quotation marks omitted).

Nor should the Court accept Officer Pearson's invitation to "draw a line between constitutional and unconstitutional sexual assaults." *Hess*, 72 F.4th at 766. Doing so would effectively "recognize a category of constitutionally permissible sexual assault by a public official." *Id.* at 767.

Officer Pearson's sexual assault of Ms. Wardlaw was "egregious and outrageous," and satisfies the conscience-shocking standard. *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013).

### 2. Ms. Wardlaw's substantive due process right was clearly established.

*Abeyta*, 77 F.3d at 1255, clearly established Ms. Wardlaw's right to be free from sexual assault. To be sure, the sexual assault in *Abeyta* occurred in the "school context." *Id.* But immunity cannot be based on the distinction between the school and the police contexts because there is "no compelling explanation" for why such a distinction would be "relevant to the [prior] decision's constitutional holding." *Horn v. Stephenson*, 11 F.4th 163, 171-72 (2d Cir. 2021). After all, there is no reason to limit the constitutional right to bodily integrity to students. Thus, any reasonable officer would have understood after *Abeyta* that sexual assault by a police officer violates the substantive due process right to bodily integrity.

Even if *Abeyta* did not provide fair warning to Officer Pearson, the unconstitutionality of sexual assault is established by the weight of authority from other circuits. *See Hess*, 72 F.4th at 763; *Haberthur*, 119 F.3d at 723. Additionally, Officer Pearson is not entitled to qualified immunity because sexual assault is among the acts "are so obviously unlawful that they don't

11

require detailed explanation," *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

### III. Officer Pearson is not entitled to dismissal of Ms. Wardlaw's Colorado constitutional claims.

Officer Pearson seeks dismissal of Ms. Wardlaw's state-law claims, contending (at 13-15) that Ms. Wardlaw has failed, as a matter of law, to plead any substantive violations of Colorado constitutional law.[3] These arguments lack merit.

To start, Officer Pearson's arguments attempt to shift his burden to demonstrate his entitlement to dismissal onto Ms. Wardlaw. But that burden is on Officer Pearson, and his cursory arguments fall well short. *See* Charles Alan Wright & Arthur R. Miller, 5A Federal Practice and Procedure § 1357 (3d ed. 2019) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists."). He has failed to show he is entitled to dismissal of Ms. Wardlaw's state law claims.

#### A. Colorado due process

Officer Pearson asserts (at 14) that Ms. Wardlaw's Colorado due process claim should be dismissed for lack of Colorado precedent. But that cannot entitle him to dismissal. If it did, essentially no plaintiff could ever state a C.R.S. § 13-21-131 claim, given that the statute was recently enacted, and Colorado courts have yet to interpret the substantive state constitutional protections it provides. In any case, Officer Pearson also argues (at 14) that a Colorado due process violation requires "outrageous conduct." The authority he cites, however, holds only that outrageous conduct violates due process, but plainly does not *require* outrageous conduct to state

---

[3] Officer Pearson does not contend that the claims should be dismissed because his conduct was not "under color of law" within the meaning of C.R.S. § 13-21-131, or for failure to allege any other element of that statute.

12

a due process violation. In any event, Officer Pearson's conduct—using his position as a law enforcement officer to gain access to and assault Ms. Wardlaw—was outrageous.

### B. Colorado unlawful seizure

Second, with respect to Ms. Wardlaw's Colorado unlawful seizure claim, Officer Pearson asserts only that the Fourth Amendment is substantially similar to article II, section 7. But that is not enough. As the Colorado Supreme Court has explained, "[w]hen interpreting our own constitution, we do not stand on the federal floor; we are in our own house." *Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314, 324 (Colo. 2020). Thus, "even parallel text does not mandate parallel interpretation." *Id.* Indeed, Colorado courts have departed from federal law, repeatedly holding that "article II, section 7 provides greater privacy protections than the Fourth Amendment." *People v. McKnight*, 446 P.3d 397, 404 (Colo. 2019). There is thus no support for Officer Pearson's contention (at 15) that federal law is dispositive of Ms. Wardlaw's claims. Even if it were, his sexual assault was an unreasonable seizure for the reasons described above with respect to the Fourt Amendment claim.

### C. Colorado equal protection

Ms. Wardlaw draws on two constitutional provisions for her Colorado equal protection claim: article II, section 25 and article II, section 29. Officer Pearson, however, does not engage directly with Ms. Wardlaw's article II, section 29 claim, and merely contends (at 15) that Colorado's equal protection guarantee is found in article II, section 25. But section 29 provides an explicit protection from discrimination "under the law . . . on account of sex." Colo. Const. art. II, § 29. Ms. Wardlaw has plausibly alleged that Officer Pearson targeted her for harassment and assault "on account of sex." Consequently, she has stated a claim based on article II, section 29.

13

Moreover, the authority cited by Officer Pearson in support of his argument that the analysis under article II, section 25 is "identical" to federal law is inapposite. All the cases he cites deal with equal protection analysis of statues—not of a government official's sexual harassment or assault. In any case, Ms. Wardlaw has plausibly alleged that Officer Pearson discriminated against her because of her sex, without any countervailing justification.

Ms. Wardlaw has alleged more than enough facts to show Officer Pearson plausibly violated her Colorado constitutional rights, and Officer Pearson has not shown he is entitled to dismissal of Ms. Wardlaw's C.R.S. § 13-21-131 claims.

## CONCLUSION

Officer Pearson's motion to dismiss should be denied in its entirety.

Respectfully submitted,

*s/ Felipe Bohnet-Gomez*
Felipe Bohnet-Gomez
Azra Taslimi
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com
at@rmlawyers.com

*Counsel for Plaintiff*

## Certificate of Compliance

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*s/ Felipe Bohnet-Gomez*
Felipe Bohnet-Gomez