IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00834-DDD-NRN

AMY WARDLAW,

    Plaintiff,

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER, a governmental entity;
TOWN OF OLATHE, a municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

    Defendants.

---

**Plaintiff's Response to Defendant Pacheco's July 21, 2023 Motion to Dismiss [ECF No. 60]**

---

Defendant Pacheco's motion to dismiss should be denied.

## INTRODUCTION

Chief Pacheco had actual knowledge of Officer Pearson's harassment of Ms. Wardlaw and other dispatchers, his groping of a trainee, and of other troubling allegations. Rather than take any reasonable supervisory response, Chief Pacheco at best completely abdicated his supervisory responsibilities as police chief. At worst, he actively protected Pearson and acquiesced in his misconduct. Ms. Wardlaw has alleged more than enough facts to state a claim for supervisory liability against Chief Pacheco.

## FACTS

To avoid duplication, Ms. Wardlaw omits a discussion of the facts surrounding her April 4, 2021 sexual assault by Defendant Pearson. Those facts are summarized in Ms. Wardlaw's

Response to Defendant Pearson's Motion to Dissmiss. What follows is a summary of the facts related to Ms. Wardlaw's supervisory liability claims.

Defendant Rogelio Pacheco was the Police Chief of Olathe and was a final policymaker for Olathe regarding law enforcement matters. FAC ¶ 16. Chief Pacheco was also a Director of Defendant WestCO. FAC ¶¶ 10-13.

Defendant Georgette Black was a Sergeant at the Olathe Police Department, and before that, also worked as a dispatcher at WestCO. FAC ¶¶ 17 & 26. While working at WestCO she personally witnessed Officer Pearson's sexual harassment and inappropriate touching of Ms. Wardlaw. FAC ¶¶ 26-29. Black then became Officer Pearson's direct supervisor at the Olathe Police Department. FAC ¶ 30. Ms. Wardlaw repeatedly complained to Sergeant Black about Officer Pearson's sexual harassment, to no avail. FAC ¶¶ 31-32. Officer Pearson's behavior was widely known. FAC ¶ 73.

Chief Pacheco and Sergeant Black actually knew about Officer Pearson's sexual harassment of WestCO dispatchers but did nothing. FAC ¶¶ 74-75. Roland Hutson, the Mayor of Olathe, had witnessed Officer Pearson's sexual harassment too. FAC ¶¶ 89-93. Chief Pacheco received at least one formal complaint regarding Officer Pearson's sexual harassment of a female WestCO dispatcher. FAC ¶¶ 96-99. Sergeant Black also received at least one formal complaint of sexual harassment against Officer Pearson. FAC ¶ 100. Sergeant Black also received at least one additional complaint from a female WestCO dispatcher regarding sexual harassment by Officer Pearson and did nothing in response. FAC ¶¶ 106-107.

Chief Pacheco and Sergeant Black did not take any appropriate steps to address Officer Pearson's sexual harassment. FAC ¶ 117. The extent to which they did anything at all is disputed, but at most they simply told Officer Pearson not to touch female dispatchers. FAC ¶¶

2

95 & 103-104. Indeed, Chief Pacheco instructed Sergeant Black not to take any formal disciplinary action against Officer Pearson. FAC ¶ 103. In any case, Sergeant Black was aware that Officer Pearson continued to go to WestCO "a lot." FAC ¶ 105.

Chief Pacheco and Sergeant Black knew that Officer Pearson had previously sexually assaulted and harassed at least one female subordinate at the Olathe Police Department. FAC ¶¶ 178, 180, 185 & 192. Specifically, Officer Pearson had sexually harassed his trainee, Officer Eddie Jarrell, by lewd gestures simulating oral sex, and repeated sexual touching of her thighs. FAC ¶¶ 180-184. Officer Jarrell complained more than once to Sergeant Black about Officer Pearson's sexual harassment and inappropriate touching. FAC ¶¶ 180 & 185. When Officer Jarrell ultimately asked to be removed from training with Officer Pearson, Sergeant Black told her that Officer Pearson acted similarly towards the WestCO dispatchers. FAC ¶¶ 185-186. Officer Jarrell's complaint was not documented and no disciplinary action was taken towards Officer Pearson. FAC ¶ 191.

Chief Pacheco knew of Officer Pearson's sexual harassment of Officer Jarrell because Sergeant Black told him. FAC ¶ 192. As with the complaint that Officer Pearson had sexually harassed a dispatcher, Chief Pacheco instructed Sergeant Black not to take any formal disciplinary action against Officer Pearson. *Id.*

Chief Pacheco and Sergeant Black also received other complaints regarding Officer Pearson's inappropriate on-duty sexual conduct but did not take any formal disciplinary action with respect to any of them. FAC ¶¶ 193-205. One such complaint accused Officer Pearson of engaging in a sexual relationship while on duty. FAC ¶¶ 196-198. The complaint was neither documented, nor investigated. FAC ¶ 198. Another complaint alleged that Officer Pearson propositioned a woman in his custody for sex. FAC ¶¶ 202-203.

3

Before he was hired by the Olathe Police Department, Officer Pearson had been formally disciplined at, or fired from, at least three previous government jobs due to sexual harassment or other inappropriate behavior. FAC ¶¶ 206-216.

## ARGUMENT

### I.     Officer Pearson acted under color of state law.

Chief Pacheco's argument (at 7-9) that Officer Pearson did not act under color of state law is without merit. Action under color of state law—or state action—is an "an element of § 1983." *Sturdivant v. Fine*, 22 F.4th 930, 935 (10th Cir. 2022); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (explaining that "in a § 1983 action brought against a state official" the two formulations "are identical"). Whether an official acted under color of state law is generally a question of fact for the jury. *See Pleasant v. Lovell*, 876 F.2d 787, 799 (10th Cir. 1989).

"The Supreme Court has broadly interpreted the color of law requirement." *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999). It has held that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). Indeed, it is "firmly established" that a § 1983 defendant acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49-50 (1988).

State action can be shown in several ways. For example, "state employment is generally sufficient to render the defendant a state actor." *Lugar*, 457 U.S. at 935 n.18. "An officer can be held to be acting under color of law when he or she is in uniform and displaying a badge." *United States v. Christian*, 342 F.3d 744, 751 (7th Cir. 2003). And "[t]he color of law element may be satisfied by the fact that an official gains access to the victim in the course of official

4

duty." *United States v. Giordano*, 442 F.3d 30, 43 (2d Cir. 2006). Ultimately, the state action requirement is satisfied by showing a "nexus" between the defendant's actual or apparent "authority as a public employee," and "the violation allegedly committed by the defendant." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995).

Ms. Wardlaw alleges sufficient facts to infer that Officer Pearson was acting under color of law when he assaulted Ms. Wardlaw, because he gained access to Ms. Wardlaw only because of his official position, in the course of his official duties.

Ms. Wardlaw's complaint plausibly alleges that Officer Pearson's interaction with Ms. Wardlaw was connected with his official duties. Officer Pearson went to WestCO—and specifically sought out Ms. Wardlaw—to purportedly discuss official business related to his duties as a police officer. Critically, he was on duty at the time, in uniform, and even brought a police department trainee with him. FAC ¶¶ 37-39. Officers of member agencies, including Officer Pearson, met with dispatchers as part of their work as police officers. FAC ¶¶ 53-53. Even if Officer Pearson was not purporting to investigate a crime or make an arrest, police officers have administrative duties, too.

Ms. Wardlaw's complaint also plausibly alleges that Officer Pearson used his official position to exert influence or control over Ms. Wardlaw to facilitate his assault. Construing all reasonable inferences in Ms. Wardlaw's favor, the encounter between her and Pearson was not a private encounter wholly unrelated to Pearson's state-derived position and authority. Rather, Ms. Wardlaw was compelled—against her wishes—to meet with Pearson about official business, due to his state-derived authority. FAC ¶¶ 45-55. Officer Pearson had engaged in repeated sexual harassment of Ms. Wardlaw and other dispatchers with impunity, due to his official position.

FAC ¶¶ 25-36, 74, 77. And it is at least reasonable to infer that Officer Pearson knowingly took advantage of his position to accomplish his assault.

In addition, Ms. Wardlaw has alleged sufficient facts to plausibly show that Officer Pearson purposely, while on duty and in uniform, used his state-derived authority to enter WestCO and "gain[] access to" Ms. Wardlaw in order to assault her "in the course of official duty." *Giordano*, 442 F.3d at 43 (holding such a showing satisfies "[t]he color of law element"); *see also Almand v. DeKalb Cty.*, 103 F.3d 1510, 1514-15 (11th Cir. 1997) (explaining that a police officer acts under color of state law if he "gained access" to victim "because of his status as a police officer," but not if he enters "by forcibly breaking in" like "any other ruffian"); *Lee v. Borders*, 764 F.3d 966, 971 (8th Cir. 2014) (evidence that defendant's state "employment g[ave] him access both to the kitchen and to [the plaintiff]" sufficiently supported state action element); *D.G. v. City of Las Cruces*, No. 14-CV-368 MCA/WPL, 2015 WL 13665421, at *9 (D.N.M. Mar. 25, 2015) (police officer who sexually assaulted a student on a voluntary "ride-along" "had access to" the victim only due his state-derived authority and therefore "acted under color of law when he sexually assaulted" her); *Hess v. Garcia*, 72 F.4th 753 (7th Cir. 2023) (same).

Moreover, it is reasonable to infer that Officer Pearson's official position and invocation of official police business had "the purpose and effect of influencing the behavior of others," both in gaining entry to WestCO, and in inducing Ms. Wardlaw to let him in her office. *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006). As alleged, Officer Pearson's abuse of his position as an Olathe police officer was essential to his assault of Ms. Wardlaw. Thus, Officer Pearson's state-derived position and authority "was an enabling factor in his assault," even if the assault itself arguably "was wholly unrelated to the realm of his grant of [official] authority." *Whitson v. Hanna*, No. 18-cv-02076-DDD-SKC, 2023 WL 2570224, at *4 (D. Colo.

6

Mar. 6, 2023) (distinguishing between the standards for state action and municipal policymaking authority).

The facts here also differ starkly from those cases where plaintiffs have fallen short of plausibly alleging state action.

In *Jojola*, a case involving a school janitor who sexually abused a student, the plaintiff had only alleged the bare fact that the defendant had committed a sexual assault. *Jojola v. Chavez*, 55 F.3d 488, 494 n.7. Thus, the Tenth Circuit held that the plaintiff failed to allege state action because "[t]he complaint is devoid of any allegation that [the janitor] enticed [the student] into the classroom through the use or misuse of any state authority he may have possessed." *Id.* at 494. To the contrary, Ms. Wardlaw has alleged facts showing how Officer Pearson deliberately used his state-derived authority to access Ms. Wardlaw, and to lure—or "entice"— her into a vulnerable position to enable his assault of her. FAC ¶¶ 40-63.

*Haines v. Fisher*, 82 F.3d 1503, 1505 (10th Cir. 1996), involved a prank robbery staged by a police officer who "disguise[d] himself as a robber" by wearing "a trenchcoat" and "a balaclava mask," and who "did not wear his police uniform shirt." The Tenth Circuit explained that under these facts the defendant officers were not acting under color of law because they "were not using their badges of authority, *i.e.*, their positions as a policemen … to accomplish the 7-Eleven prank." *Id.* at 1508. Here, by contrast, Officer Pearson was in uniform, on duty, and pretended that he was acting on official police business. FAC ¶¶ 37-38, 43-44. Officer Pearson *did* use his position as a policeman to 'accomplish' his assault, and therefore acted under color of state law.

Because Officer Pearson's abuse of his official position "made possible" his sexual assault of Ms. Wardlaw, Ms. Wardlaw has plausibly alleged state action. *West*, 487 U.S. at 49.

7

### II. State action encompasses crimes and other illegal acts committed by government officials.

Pacheco repeatedly contends (at 5, 9) that Ms. Wardlaw's claims fail as a matter of law because "Pearson was committing a crime which cannot constitute governmental action." But, "[i]f that were true, no § 1983 suit could ever succeed, for the premise of a successful suit is that the officer acted illegally—that is, outside the scope of his authority." *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006). And Pacheco cites no authority in support of this proposition. To the contrary, the Supreme Court has held that illegality under state law is irrelevant to whether conduct violated section 1983. *See Monroe v. Pape*, 365 U.S. 167, 183 (1961); *see also Snowden v. Hughes*, 321 U.S. 1, 11 (1944) ("state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature"). Indeed, certain constitutional deprivations under color of state law are themselves federal crimes. *See* 18 U.S.C. § 242. Consequently, the fact that Officer Pearson's conduct is criminal has no bearing on Section 1983 liability. *See Giordano*, 442 F.3d at 44 (explaining that criminal acts "cannot, by their nature alone, defeat an assertion that they were performed under 'color of law.'")

### III. Ms. Wardlaw has plausibly alleged a Section 1983 claim against Officer Pearson.

#### A. Equal Protection Clause

Pacheco argues (at 3-4) that because "Pearson was not [Ms. Wardlaw's] supervisor," Ms. Wardlaw has failed to adequately allege that "she was discriminated against by a state actor who used his government position to exert authority over the plaintiff." Pacheco's argument lacks merit.

To begin with, Pacheco is mistaken that Ms. Wardlaw can only state an Equal Protection claim if Officer Pearson were Ms. Wardlaw's supervisor. This misconstrues the applicable

standard under the Equal Protection Clause. As the Tenth Circuit made clear in *Johnson v. Martin*, 195 F.3d 1208, 1217 (10th Cir. 1999), Ms. Wardlaw need only plausibly allege that Officer Pearson exercised "some governmental authority" in connection with his harassment.

Ms. Wardlaw has made such a showing, for the reasons described in Ms. Wardlaw's response to Officer Pearson's motion, and above regarding action under color of law. And as Pacheco admits (at 4), Officer Pearson was "on shift" and his encounter with Ms. Wardlaw was "part of work-related activities." Indeed, Officer Pearson went to WestCO as part of his official duties as a police officer, and used his official authority to gain access to Ms. Wardlaw in the middle of such a "work related activit[y]." Thus, Officer Pearson abused his authority to not only harass Ms. Wardlaw, but sexually assault her.

Finally, Pacheco suggests (at 5) that Officer Pearson could not have committed any constitutional violation because he was supposedly told not to touch anyone and not to go to WestCO unless he needed to be there. [FAC 94, 104]. Ms. Wardlaw, however, disputes what, if anything Chief Pacheco or Sergeant Black actually told Officer Pearson regarding his sexual harassment. Moreover, it is well settled that liability can be imposed under Section 1983 for a "misuse," *Classic*, 313 U.S. at 326, or "abuse[]," *West*, 487 U.S. at 49-50, of power or authority. So, even if Pacheco or Black had told Pearson not to touch anyone, that would not preclude liability here.

Ms. Wardlaw has therefore stated an Equal Protection claim.

### B. Substantive due process

Pacheco's argument that Ms. Wardlaw has failed to state a substantive due process claim is substantially the same as Officer Pearson's argument and fails for the same reasons discussed in Ms. Wardlaw's response to Officer Pearson's motion.

9

Pacheco's citation to *Williams v. Berney*, 519 F.3d 1216, 1225 (10th Cir. 2008), moreover, does not compel a different result because *Williams* concerned an ordinary assault by an official who lacked "any official imprimatur to use force." By contrast, Officer Pearson was "authorized to use force in performing his daily job," committed a sexual assault while on duty, and "leverage[d] his position to further the attack." *Id.* Remarkably, Pacheco also suggests (at 6) that, Officer Pearson should be "afforded latitude" with respect to his conduct like other "governmental actors operating in their official capacities." But government officials plainly should not and do not enjoy any "latitude" to sexually assault anyone. When they do so, they violate the substantive due process right to bodily integrity. *See Hess*, 72 F.4th at 764-767.

And, once again, Pacheco contends (at 6) that because Pearson's conduct was "criminal and unsanctioned," it cannot be "government action" violating the constitution. But substantive due process violations under the 'intent to harm' standard are often, by definition, crimes and presumably unsanctioned by official government policy. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). That Officer Pearson's conduct was criminal makes it *more* plausible, not less, that he violated Ms. Wardlaw's constitutional rights.

Ms. Wardlaw has therefore plausibly alleged a substantive due process violation.

### C. Fourth Amendment

Pacheco's argument that Ms. Wardlaw has failed to state a Fourth Amendment claim is substantially the same as Officer Pearson's argument and fails for the same reasons discussed in Ms. Wardlaw's response to Officer Pearson's motion.

Pacheco's additionally contends (at 7) that Ms. Wardlaw "was clearly not restrained or seized at any point" because after Officer Pearson grabbed and forcibly groped her she elbowed him away. In other words, according to Pacheco Ms. Wardlaw was not seized because she eventually got free of Officer Pearson's grasp. The Supreme Court, however, explicitly rejected

10

this argument in *Torres*, holding that "the application of physical force to the body of a person with intent to restrain is a seizure **even if the person does not submit and is not subdued**." *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021) (emphasis added). Consequently, the fact that Ms. Wardlaw eventually elbowed Officer Pearson away is irrelevant. Because Officer Pearson intentionally applied physical force to Ms. Wardlaw's body with the intent to restrain, he seized her. Ms. Wardlaw has therefore stated a Fourth Amendment claim.

## IV. Ms. Wardlaw has plausibly alleged Chief Pacheco's supervisory liability.

### A. Personal involvement

Pacheco argues that Ms. Wardlaw failed to allege his "personal involvement" because Ms. Wardlaw did not allege his "participation" in Ms. Wardlaw's sexual assault since she did not "allege that Chief Pacheco was on the scene of the incident or directed Pearson's actions." (at 10-11). But personal participation or direction are not the only ways to satisfy the requirement of personal involvement under a supervisory liability theory. It can also be satisfied "by establishing the supervisor promulgated, created, implemented, or possessed responsibility for the continued operation of a policy" that "resulted in a violation of the plaintiff's constitutional rights." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (cleaned up).

That is the case here. Ms. Wardlaw does not allege that Officer Pearson personally participated in, or directed, Officer Pearson's sexual assault. Rather, Ms. Wardlaw alleges that Chief Pacheco was responsible for the Olathe Police Department's supervisory and disciplinary policies, and that his implementation or operation of those policies (or his abject failure to do so) resulted in the violation of Ms. Wardlaw's constitutional rights. *See Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023) (assuming that supervisory liability can be predicated on a Sheriff's "lack of supervision" of a subordinate). In other words, Chief Pacheco knew about Officer

11

Pearson's behavior and "did 'very little' and 'nothing' to remedy it." *Johnson*, 195 F.3d at 1219. Ms. Wardlaw has therefore adequately pled Chief Pacheco's personal involvement under supervisory liability theory.

### B. Causation

The facts pled by Ms. Wardlaw show Chief Pacheco knew that Officer Pearson was a serial sexual harasser, and that he did not stop at verbal harassment, but engaged in inappropriate sexual touching of more than one victim. In other words, Pacheco was aware that Officer Pearson had engaged in the same conduct that is the subject of Ms. Wardlaw's claims here. So, it is more than plausible that, by failing to impose any discipline or other supervisory measures in the face of multiple prior complaints of sexual harassment and sexual touching by Officer Pearson, Chief Pacheco "set[] in motion a series of events that [he] knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Burke*, 935 F.3d at 997.

Rather than addressing Pacheco's knowledge of Officer Pearson's conduct, Pacheco instead faults Ms. Wardlaw (at 11) for not "br[inging] her concerns about Pearson to Chief Pacheco" or making a "direct official complaint." But the Tenth Circuit has made clear that no such reporting is required. *See Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1235 (10th Cir. 2014) ("Our cases do not suggest that a plaintiff's failure to report harassment precludes liability for an equal-protection violation."); *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (supervisor need not "actually kn[o]w" of the plaintiff's "specific circumstances").

Next, Pacheco attempts to pass off his supervisory responsibilities to Defendant Black. Pacheco contends (at 11-12) that he "assigned" the complaint regarding Pearson's behavior to Black, and that Black was her "direct supervisor." The Tenth Circuit rejected a similar argument

in *Johnson*, holding that that a defendant-supervisor's argument that "referral of the allegations against [the harasser] to another employee was an appropriate response" did not defeat supervisory liability as a matter of law. 195 F.3d at 1220. Such a referral plausibly "constituted an abdication of his responsibilities as the City's Personnel Director," and not an appropriate supervisory response. *Id.* The same is true of Chief Pacheco.

Accordingly, Ms. Wardlaw has adequately pled facts showing that Chief Pacheco's own knowledge and inaction caused her constitutional injury.

### C. State of mind

The Tenth Circuit has held that the state of mind required for a supervisory liability theory is the same as that "required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Pacheco does not address the distinct state of mind requirements for Ms. Wardlaw's Equal Protection, substantive due process, and Fourth Amendment theories of liability. Instead, Pacheco argues (at 12) only that Ms. Wardlaw's claim must be dismissed for failure to show the deliberate indifference necessary for a substantive due process claim.

The state of mind required for a Fourth Amendment violation, however, is objective reasonableness. That is true even under a supervisory liability theory. *See Webb v. Thompson*, 643 F. App'x 718, 725 (10th Cir. 2016) (applying "an objective reasonableness test to Fourth Amendment claims under § 1983" and concluding "the same standard applies to § 1983 claims against supervisors"). And under the objective reasonableness analysis, "we do not consider an actor's state of mind." *Id.* Consequently, Ms. Wardlaw's Fourth Amendment supervisory liability against Pacheco is not subject to dismissal on state-of-mind grounds.

With respect to Ms. Wardlaw's Equal Protection and substantive due process theories, Ms. Wardlaw's factual allegations are more than sufficient to establish deliberate indifference on the part of Chief Pacheco.

Chief Pacheco was aware that Officer Pearson had sexually harassed and touched dispatchers at WestCO, and that Officer Pearson had sexually harassed and repeatedly grabbed the inner thighs of a subordinate at the police department. In addition, Pacheco had received other complaints of sexual harassment and impropriety. It is reasonable to infer that Pacheco was abundantly aware of Officer Pearson's tendency to engage in sexual harassment and unwanted sexual touching of women he encountered on duty. Yet despite repeated complaints, Pacheco deliberately decided not to take any disciplinary measures. Predictably, Officer Pearson's pattern of behavior did not change, and he then groped Ms. Wardlaw. Under these circumstances it is more than plausible that Pacheco "deliberately or consciously fail[ed] to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke*, 935 F.3d at 997-98 (citation omitted).

Ms. Wardlaw has therefore adequately pled facts showing Pacheco's supervisory liability.

## CONCLUSION

Chief Pacheco's motion to dismiss should be denied in its entirety.

Respectfully submitted,

*s/ Felipe Bohnet-Gomez*
Felipe Bohnet-Gomez
Azra Taslimi
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400

14

fbg@rmlawyers.com  
at@rmlawyers.com

*Counsel for Plaintiff*

## Certificate of Compliance

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<u>*s/ Felipe Bohnet-Gomez*</u>  
Felipe Bohnet-Gomez