IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00834-DDD-NRN

AMY WARDLAW,

    Plaintiff,

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER, a governmental entity;
TOWN OF OLATHE, a municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

    Defendants.

**Plaintiff's Response to Defendant Black's July 24, 2023 Motion to Dismiss [ECF No. 62]**

Defendant Black's motion to dismiss should be denied.

### INTRODUCTION

Like Chief Pacheco, Sergeant Black completely abdicated her supervisory responsibilities with respect to Officer Pearson's repeated sexual harassment and touching of the women he interacted with as a police officer. Not only did Sergeant Black know of several complaints of Officer Pearson's behavior, she herself had witnessed his harassment and inappropriate touching—including of Ms. Wardlaw. When an Olathe Police Department trainee complained about Officer Pearson's repeated sexual harassment and groping, Sergeant Black's reaction was to say that was how Officer Pearson treated the dispatchers. Yet, though she was Officer Pearson's direct supervisor, Sergeant Black did not take even the mildest form of disciplinary action. Predictably, Officer Pearson's behavior continued unabated. Ms. Wardlaw has alleged

more than enough facts to state a claim for supervisory liability against Sergeant Black. Moreover, Sergeant Black is not entitled to qualified immunity because it was clearly established—and obvious—that she could be subjected to liability for her failure to take any appropriate action in response to repeated complaints and incidents of sexual harassment and touching.

## FACTS

To avoid duplication, Ms. Wardlaw omits a discussion of the facts surrounding her April 4, 2021 sexual assault by Defendant Pearson, as well as the facts relating to Defendant Black's supervisory liability. Those facts are summarized in Ms. Wardlaw's Response to Defendant Pearson's Motion to Dissmiss, and in Ms. Wardlaw's Response to Defendant Pacheco's Motion to Dismiss, respectively.

## ARGUMENT

### I. The records attached by Sergeant Black are outside of the pleadings and should not be considered by the Court.

Black attaches as an exhibit a part of the Montrose Police Department's investigative records regarding Officer Pearson and cites it extensively (at 5-7) to dispute the factual predicate of Ms. Wardlaw's claims. This exhibit should be excluded from the court's consideration or, in the alternative, the motion should be converted to one for summary judgment. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). In resolving a motion under Rule 12, the Court may only "consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). The investigative report attached by Black fails on both counts.

2

First, the report itself is not "central" to Ms. Wardlaw's claims. It is not like a contract or similar document, the interpretation of which will determine the parties' legal rights. Indeed, none of Ms. Wardlaw's claims turn on whether that the Montrose Police Department investigated after the fact, or what it concluded. Rather, what matters are the underlying facts about Officer Pearson's conduct, who knew what about that conduct, and what, if anything, they did about it.

Second, the version of those facts transcribed in the MPD's investigation is disputed. Officer Pearson, for example, "denies any allegations of inappropriate behavior." (Pearson Mot. 3). And although Chief Pacheco and Sergeant Black have both claimed (at some point) to have told Officer Pearson not to touch anyone, Ms. Wardlaw will seek to discredit those claims and establish that they did not even do that. Consequently, the exhibit itself is outside of the pleadings and irrelevant to the Court's determination of the legal sufficiency of Ms. Wardlaw's complaint under Rule 12(b)(6).

Black's exhibit is extraneous and should be disregarded.

## II. Ms. Wardlaw has plausibly alleged that Officer Pearson violated her constitutional rights.

Black contends (at 3-4) that Ms. Wardlaw has failed to state a constitutional violation based on Officer Pearson's conduct. But Black does not present any argument of her own, and instead "incorporates" the arguments of "Pearson, Pacheco, and Olathe." So, Ms. Wardlaw likewise incorporates her respective responses to these arguments.

## III. Ms. Wardlaw has plausibly alleged Sergeant Black's supervisory liability.

### A. Personal involvement

Though she admits that "[s]ometime in 2019" she learned of Officer Pearson's sexual harassment and touching, Black primarily claims that she cannot be liable because she did know of any incidents between "2019 and April 2021." But in doing so Black fails to account for all of

3

Ms. Wardlaw's factual allegations. Indeed, Ms. Wardlaw alleges that Black learned of a second incident at WestCO. FAC ¶¶ 106-107. And, tellingly, Black ignores the allegations of Officer Pearson's sexual harassment and groping of a subordinate, FAC ¶¶ 180-186, as well as the other complaints regarding his on-duty behavior FAC ¶¶ 194-205. Ms. Wardlaw's factual allegations do not, as a matter of law, show an "absence of Black's knowledge" as Black claims (at 5-6). To the contrary, Ms. Wardlaw has alleged that Black knew of several instances of sexual harassment and touching on the part of Officer Pearson. FAC ¶¶ 26-29, 31-32, 101-102, 106.

Moreover, it is not clear how Black's knowledge is relevant to the personal involvement element, as opposed to causation or state of mind. For the reasons described in Ms. Wardlaw's response to Pacheco's motion, the personal involvement element of a supervisory liability claim can be established "by establishing the supervisor promulgated, created, implemented, or possessed responsibility for the continued operation of a policy" that "resulted in a violation of the plaintiff's constitutional rights." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (cleaned up); *see also Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023) (assuming that supervisory liability can be predicated on a Sheriff's "lack of supervision" of a subordinate). Black does not deny that she was responsible for supervising Officer Pearson, or implementing the department's supervisory and disciplinary polices with respect to his conduct. At most, Black denies (at 7) that she had a role in hiring Officer Pearson. But in any case, Ms. Wardlaw alleged detailed facts showing how Black, in consultation with Chief Pacheco, repeatedly failed to document, investigate, or impose any discipline on Officer Pearson when confronted with complaints of his sexual harassment and groping.

Accordingly, Black has failed to show that she is entitled to dismissal of Ms. Wardlaw's supervisory liability claim against her for failure to adequately plead Black's personal involvement.

### B. Causation

Black claims that her supervisory failures could not, as a matter of law, have caused Ms. Wardlaw's injury. Black's argument amounts to an assertion (at 8) that she had "already warned Pearson," and therefore there was nothing more that Black could have done to prevent Pearson from continuing to harass and touch the women he encountered while on duty. This argument lacks any merit.  As an initial matter, Black did not "warn" Officer Pearson. To the contrary, she at most "told" Officer Pearson not to touch anyone, it is reasonable to infer that she did not even do that. There is no indication that Officer Pearson was ever threatened with any sanction or other consequence. As Officer Pearson's supervisor, Black could obviously have done more. Black could have plausibly instituted formal discipline of Officer Pearson, up to and leading to his termination. The loss of his official position "would have prevented" his assault of Ms. Wardlaw, because it was his official authority that made it possible in the first place. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 779 (10th Cir. 2013). And there are any number of measures short of termination that could plausibly have prevented Officer Pearson from sexually assaulting Ms. Wardlaw, none of which were ever attempted. *See id.* at 780 (noting that officer had "received a pay cut and a stern warning in the notice of discipline" and faced "threats of discharge and criminal punishment").

Accordingly, Black has failed to show that she is entitled to dismissal of Ms. Wardlaw's supervisory liability claim against her for failure to adequately plead causation.

### C. State of mind

Like Pacheco, Black also claims (at 8-10) that Ms. Wardlaw failed to adequately allege facts supporting the requisite state of mind. And like Pacheco, Black ignores Ms. Wardlaw's Fourth Amendment theory of liability. Thus, for the reasons articulated in Ms. Wardlaw's response to Black's motion, Black is not entitled to dismissal of Ms. Wardlaw's Fourth Amendment claim against her on state-of-mind grounds. Black's arguments with respect to substantive due process and Equal Protection fail as well.

With respect to Ms. Wardlaw's substantive due process theory of liability, Black asserts (at 9) that the requisite state of mind is "conscience shocking." But "conscience shocking" is a substantive element of the violation; it has never been applied to describe an actor's state of mind. To the contrary, the Tenth Circuit has suggested that deliberate indifference is the correct state of mind for evaluating a supervisory liability claim involving substantive due process. *Schneider*, 717 F.3d at 769 (assuming "deliberate indifference is the applicable state of mind").

As for Ms. Wardlaw's equal protection theory, Black argues (at 8) that intentional discrimination must be shown. To be sure, there is support for the proposition that an equal protection violation ordinarily requires proof of discriminatory intent. But the Tenth Circuit has explained that "deliberate indifference to known sexual harassment" can establish "supervisory liability under an equal-protection theory. *Burke v. New Mexico*, 696 F. App'x 325, 330 (10th Cir. 2017).

Either way, whether the standard is deliberate indifference or some sort of discriminatory intent, Ms. Wardlaw has alleged enough facts to plausible meet it at this early stage of the proceedings. Black certainly "deliberately or consciously fail[ed] to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of

the type experienced by the plaintiff." *Burke v. Regalado*, 935 F.3d at 997-98 (citation omitted). Despite being presented with multiple incidents of sexual harassment and touching by Officer Pearson, she decided not to impose any formal discipline or take any action. At most, she may have told Officer Pearson not to touch anyone. Equally troubling is the fact that Black failed even to document Officer Jarrell's complaint, as well as at least one complaint by a WestCO dispatcher. From this, it is reasonable to infer an intent on Black's part to cover up Officer Pearson's discriminatory conduct, or conscious acquiescence to Officer Pearson's sex discrimination. Such an inference finds further support in the fact that Black's response to Officer Jarrell's complaints of harassment and groping of her thighs was simply to note that Officer Pearson also behaved that way with female dispatchers.

Therefore, Ms. Wardlaw has alleged sufficient facts to plausibly establish Black's culpable state of mind with respect to Ms. Wardlaw's Equal Protection and substantive due process theories.

## IV. Sergeant Black is not entitled to qualified immunity.

### A. The Equal Protection Clause violation is clearly established.

It has long been clearly established that deliberate indifference to sexual harassment can be the basis for supervisory liability under the Equal Protection Clause. *See Burke v. New Mexico*, 696 F. App'x at 330 (citing *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999)). In particular, the Tenth Circuit's decision in *Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999) is particularly on point. There, the Tenth Circuit analyzed two claims of supervisory liability involving complaints that a subordinate was sexually harassing non-employees, and concluded that knowledge of the alleged sexual harassment, coupled with "subsequent inaction" or a "refus[al] to reasonably respond" to them established supervisory liability under an Equal Protection theory. Black therefore had fair warning that her failure to

reasonably respond to knowledge of Officer Pearson's sexual harassment could subject her to liability.

Black even appears to concede (at 13) that it was clearly established that a supervisor who "knowingly or consciously acquiesced in an employee's sexual harassment" violated the Equal Protection Clause. Black claims, however, that this clearly-established law does not apply here "given the absence of any well-pled, non-conclusory allegation that Black knew Pearson was continuing to cause Wardlaw a constitutional injury." But, to the contrary, Ms. Wardlaw has alleged that she specifically complained to Black about Officer Pearson's harassment repeatedly after Black became his supervisor. Black, moreover, had knowledge of Officer Pearson's behavior and proclivities from a variety of other and complaints and sources—and had even witnessed the conduct herself. Consequently, Black "knew about the allegations of sexual harassment [before April 2021] but took no remedial action"—or "refus[ed] to reasonably respond to it"—and is not entitled to qualified immunity on Ms. Wardlaw's Equal Protection theory. *Johnson*, 195 F.3d at 1220.

### B. The substantive due process violation is clearly established.

Black also had fair warning that her failure to respond to Officer Pearson's sexual harassment and touching could result in liability under the substantive due process clause.

As discussed in Ms. Wardlaw's response to Officer Pearson's motion, it was clearly established by *Abeyta v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996), that sexual assault violates an individual's substantive due process right to bodily integrity. Together with *Murrell*, 186 F.3d at 1250, and *Johnson*, 195 F.3d at 1220, it would have been clear to a reasonable supervisor in Black's position that a failure to respond to repeated allegations of sexual harassment involving touching could subject her to liability for a

8

constitutional violation, whether under an Equal Protection theory or a substantive due process theory.

This conclusion is bolstered by cases such as *Keith v. Koerner*, 707 F.3d 1185, 1187 (10th Cir. 2013), where an inmate who was sexually assaulted brought a supervisory liability claim against a defendant who she alleged "created and allowed a policy or culture of sexual misconduct" and "failed to take reasonable measures to abate the culture of sexual misconduct." The Tenth Circuit held that she plausibly stated a claim for supervisory liability for an Eighth Amendment violation because the defendant-supervisor was plausibly "responsible for managing" the correctional facility, knew about incidents of sexual misconduct, and failed "to properly investigate allegations and to terminate employees." *Id.* at 1189.

Taken together, these cases apply with "obvious clarity" to "the specific conduct in question"—failing to respond to repeated complaints of a subordinate's sexual harassment and touching. *United States v. Lanier*, 520 U.S. 259 (1997). Any reasonable supervisor would have known that failing to act could violate the constitution, even though the very action in question has not previously been held unlawful" under the substantive due process clause specifically. *Id.* (internal quotations and punctuation omitted).

Thus, Black is not entitled to qualified immunity on Ms. Wardlaw's substantive due process theory.

### C.  The Fourth Amendment violation is clearly established.

Finally, Black is also not entitled to qualified immunity under Ms. Wardlaw's Fourth Amendment theory.

As discussed in Ms. Wardlaw's response to Officer Pearson's motion, the underlying Fourth Amendment law is clearly established. Any reasonable officer would have known that

9

seizing Ms. Wardlaw by grabbing her from behind and applying physical force on her breasts, without any countervailing justification, is unreasonable under the Fourth Amendment.

That a supervisor could be held liable for causing such a seizure is "another instance of 'obvious clarity,'" *Chance v. Roberts*, No. 22-7008, 2022 WL 17481382, at \*9 (10th Cir. Dec. 7, 2022) (explaining that "[w]e cannot see how a warden who learns that her subordinates are depriving an inmate of adequate food could have any doubt about the need to take action."). Indeed, it has long been clearly established that, even if they lack direct involvement, "officers nevertheless have a duty not to cause constitutional violations." *Webb v. Thompson*, 643 F. App'x 718, 723 (10th Cir. 2016) (citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008)); *see also Burke v. Glanz*, 292 F. Supp. 3d 1235, 1249 (N.D. Okla. 2017) (denying qualified immunity on Fourth Amendment supervisory liability claim where supervisor "personally participated in covering up the lack of training, falsification of training records, and lack of basic competency while knowing that [the subordinate] posed a serious risk to the safety of Tulsa County citizens").

## CONCLUSION

Sergeant Black's motion to dismiss should be denied in its entirety.

Respectfully submitted,

*s/ Felipe Bohnet-Gomez*
Felipe Bohnet-Gomez
Azra Taslimi
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com
at@rmlawyers.com

*Counsel for Plaintiff*

10

**Certificate of Compliance**

      I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

                                                  *s/ Felipe Bohnet-Gomez*
                                                  Felipe Bohnet-Gomez