IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00834-DDD-NRN

AMY WARDLAW,

    Plaintiff,

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER, a governmental entity;
TOWN OF OLATHE, a municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

    Defendants.

**Plaintiff's Response to Defendant Olathe's July 31, 2023 Motion to Dismiss [ECF No. 65]**

Defendant Olathe's motion to dismiss should be denied as to Ms. Wardlaw's § 1983 claim against it.[1]

### INTRODUCTION

Olathe does not challenge the legal sufficiency of any of the elements of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). And for good reason. The facts alleged by Ms. Wardlaw show that Olathe, through its municipal policy- and decision-makers Chief Pacheco and Sergeant Black, maintained a policy or custom of failing to adequately screen applicants in hiring, inadequately supervising its officers regarding sexual harassment, inadequately disciplining its officers regarding sexual harassment, and inadequately

---

[1] Ms. Wardlaw concedes that her Eighth Claim for relief, for Colorado unlawful seizure under C.R.S. § 13-21-121, should be dismissed as against Defendant Olathe.

training its officers regarding sexual harassment. Pursuant to these policies, Olathe hired Officer Pearson—who had been fired from every job he had due to his sexual harassment or sexual impropriety. And then, even after Officer Pearson had engaged in a pattern of sexual harassment and touching under Olathe's badge of authority, Olathe permitted Officer Pearson's behavior continue unabated, with deliberate indifference to the rights of the women Officer Pearson encountered—whether at dispatch, on patrol, or within the Olathe Police Department itself. In sum, Ms. Wardlaw has amply alleged Olathe's responsibility for Officer Pearson's sexual assault of Ms. Wardlaw.

Thus, Olathe resorts to arguing that Officer Pearson's on-duty sexual assault did not violate any of Ms. Wardlaw's constitutional rights. But because "sexual assault by an official acting under color of law violates the constitutional rights of the victim," *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023), Ms. Wardlaw has plausibly alleged facts supporting Olathe's liability under *Monell*.

## FACTS

To avoid duplication, Ms. Wardlaw omits a discussing the facts surrounding her April 4, 2021 sexual assault by Defendant Pearson, which are summarized in Ms. Wardlaw's Response to Defendant Pearson's Motion to Dissmiss. Though Olathe does not contend that Ms. Wardlaw has failed to adequately allege a municipal policy or custom, causation, or deliberate indifference, the relevant facts are summarized in Ms. Wardlaw's Response to Defendant Pacheco's Motion to Dismiss.

## ARGUMENT

"To state a claim against a municipal entity, a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023). Olathe does not challenge any of the

elements of municipal liability as such. Rather, Olathe challenges only the underlying constitutional violations, as well as the element of action under color of state law. But because Ms. Wardlaw has plausibly stated a constitutional claim, Olathe is not entitled to dismissal of Ms. Wardlaw's municipal liability claims against it.

### I. Ms. Wardlaw has stated an Equal Protection claim.

Olathe asserts (at 6) that Ms. Wardlaw's Equal Protection claim fails as a matter of law because *Woodward v. Worland*, 977 F.2d 1392, 1394 (10th Cir. 1992), "reject[ed] an equal protection violation on essentially the same facts." But *Woodward* expressly did not "decide whether an outside third party or co-employee could ever be liable for sexual harassment under [section] 1983 and the Equal Protection Clause." *Woodward,* 977 F.2d at 1401. Instead, *Woodward* was decided on the clearly-established prong of the *qualified immunity* analysis. *Id.* Thus, *Woodward* does not address Ms. Wardlaw's municipal liability claim against Olathe, which requires reaching the *merits* of her constitutional claims. After all, municipal defendants are "not entitled to qualified immunity." *Owen v. Independence*, 445 U.S. 622, 624 (1980).[2]

As Ms. Wardlaw explains in her response to Officer Pearson's motion to dismiss it was established after *Woodward* "that to abuse any one of a number of kinds of [state-derived] authority for [the] purpose of one's own sexual gratification . . . would violate the Equal Protection Clause." *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999); see also *Shepherd v. Robbins*, 55 F.4th 810, 820 (10th Cir. 2022) (it violates the Equal Protection Clause for a defendant to "use his state-derived authority as a police officer to engage in sexual harassment").

---

[2] Even if the Court were to determine that Ms. Wardlaw's Equal Protection Claim is not clearly established, dismissal of her claim against Olathe would not be appropriate at this stage of the proceedings. Under Tenth Circuit precedent "[t]here is nothing anomalous about allowing . . . a suit against the city to proceed when immunity based on a lack of clearly established law shields the individual defendants." *Lynch v. Barrett*, 703 F.3d 1153, 1164 (10th Cir. 2013) (brackets and quotation marks omitted).

And as Ms. Wardlaw explains in her responses to Officer Pearson's and Chief Pacheco's motions to dismiss, Ms. Wardlaw has plausibly alleged facts showing that Officer Pearson abused his state-derived authority as a police officer to enter WestCO and, while on duty with his police trainee, caused Ms. Wardlaw to let him enter her locked office by asserting that he was on official police business. Olathe dismissively characterizes (at 8) Officer Pearson's conduct as "asking administrative questions about computer codes," but he did so on Olathe's behalf, with its badge of authority. FAC ¶ 59. While Olathe strenuously asserts (at 8)—without any support whatsoever—that it was a "task that has nothing to do with Pearson's authority – over anyone – as a police officer for the Town," that simply points to fact disputes about Officer Pearson's job duties. Ms. Wardlaw's allegations plausibly support that Officer Pearson had dispatch-related duties, that he had some authority over Ms. Wardlaw and the dispatchers pursuant to his role as a police officer, and that he abused that authority to facilitate his sexual assault of Ms. Wardlaw.

Finally, the Court should reject Olathe's contentions (at 8) that Officer Pearson could not have violated Ms. Wardlaw's constitutional rights because she elbowed him away and did not "submit" to him and because someone "ordered" Officer Pearson out of the dispatch center following the assault. Not only do they rely on characterizing the facts and inferences decidedly in Olathe's favor, but, more fundamentally, liability under the Equal Protection Clause does not—and should not—turn on whether an individual "submits" to sexual harassment or assault.

Because Ms. Wardlaw has alleged enough factual matter to plausibly show her entitlement to relief under the Equal Protection Clause, Olathe has not shown that it is entitled to dismissal as a matter of law.

## II. Ms. Wardlaw has stated a substantive due process claim.

Olathe argues (at 9) that Ms. Wardlaw has failed to state a substantive due process claim. Again, this argument is largely duplicative of Pearson's and Pacheco's argument, and Ms.

4

Wardlaw thus refers the Court to her responses to those prior arguments. But, again, Olathe attempts to recast Ms. Wardlaw's allegations, asserting (at 9) that Ms. Wardlaw "does not allege" that "asking administrative questions about a computer system" was "within Pearson's job duties as a police officer." To the contrary, Ms. Wardlaw does allege that—and, at minimum, that is a reasonable inference from the facts alleged in her complaint.

### III. Ms. Wardlaw has stated a Fourth Amendment claim.

Olathe also argues (at 10) that Ms. Wardlaw has failed to state an unlawful seizure claim. As with Olathe's other arguments, it is duplicative of Pearson's and Pacheco's arguments regarding Ms. Wardlaw's Fourth Amendment claims. Consequently, Ms. Wardlaw refers the Court to her responses to those prior arguments. In sum, the Supreme Court has held the Fourth Amendment not limited to seizures made for the purpose of an arrest, *see Soldal v. Cook Cty.*, 506 U.S. 56, 69 (1992), contrary to Olathe's repeated assertions (at 10-11) that a seizure requires "a custodial arrest" or a "connection to any pending investigation or law enforcement function." Tellingly, Olathe does not cite any precedent in support. Olathe cites only *D.G. v. City of Las Cruces*, No. 14-CV-368 MCA/WPL, 2015 WL 13665421 (D.N.M. Mar. 25, 2015). That decision is, of course, not binding, but it also merely denied the *plaintiff* summary judgment on a Fourth Amendment claim. Thus, the *D.G.* court's decision effectively permitted the plaintiff's Fourth Amendment claim to proceed.[3]

---

[3] In fact, the district court in *D.G. granted* the plaintiff summary judgment on the question of whether the defendant officer acted under color of state law when he sexually assaulted the plaintiff, who "went on a ride-along" with him. *Id.* at *9. The district court concluded that "the only reasonable inference from these undisputed facts is that [the officer] was acting under color of law when he sexually assaulted D.G.," because he had "access to D.G. and was able to assault her" due to his role "as a mentor to D.G. and other students" in a school program. *Id.* Thus, the officer was "clothed with the authority of state law" and "acted under color of law when he assaulted D.G." *Id.*

5

Olathe also argues (at 10) that any seizure is "dispelled" by the fact that Ms. Wardlaw "elbowed [Officer Pearson] away" and because "[l]aw enforcement officers who are engaging in an arrest do not simply walk away after the 'arrestee' elbows them and a citizen orders them out of the area." This argument fails for two reasons. First, to the extent it is an elaboration of the argument that a seizure requires a custodial arrest, that is rejected by *Soldal* and other precedents. A seizure need not involve a custodial arrest, or any other law enforcement purpose. Indeed, the purpose of the officer is irrelevant to the Fourth Amendment's objective reasonableness test. Second, *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021), made clear that it does not matter whether Ms. Wardlaw submitted to Officer Pearson's force, or ultimately escaped his grasp.

Accordingly, Ms. Wardlaw has plausibly stated a constitutional violation based on an unlawful seizure.

## IV. Ms. Wardlaw was plausibly alleged that Officer Pearson acted under Color of state law.

Finally, Olathe argues "in the alternative" (at 11) that Ms. Wardlaw's *Monell* claims must be dismissed because "[Officer] Pearson was not acting under color of state law, as is necessary to sustain a claim under 42 U.S.C. 1983." Because this argument duplicates Pacheco's argument regarding action under color of state law, Ms. Wardlaw refers the Court to her response to Pacheco's motion to dismiss.

Olathe's citation to *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cnty., Okl.*, 894 F.2d 1176 (10th Cir. 1990), however, does not support the conclusion that Officer Pearson was not acting under color state law. To the contrary, the case supports Ms. Wardlaw's argument. In *D.T.*, three students sued the school district for sexual abuse by "a male teacher of School District, during summer vacation and in relation to fund raising for a [private] summer basketball camp." *Id.* at 1177. The Tenth Circuit concluded that there was no action under color of state law

6

because at the time of the incidents, the teacher "did not . . . perform any duties or functions as a teacher or coach and he was completely free of any and all contractual obligations to the School District." *Id.* at 1190. As the Court explained, he "could not have been considered to be acting as a teacher or basketball coach because the incident occurred during his summer vacation from any school duties." *Id.* at 1191. By contrast, Officer Pearson was not on vacation and free of his duties as an Olathe officer. He was on duty, and he acted (or purported to act) in the course and scope of his work-related duties. *See id.* at 1188 (explaining that if the "basketball camp fundraising activities" were related to "school activities" then "we would agree with plaintiffs"). Accordingly, Officer Pearson's conduct was under color of state law.

Olathe also mischaracterizes *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) and *Haines v. Fisher*, 82 F.3d 1503 (10th Cir. 1996). Again, *Jojola* did not hold, as Olathe suggests (at 12) that the janitor's "actions in leading the student into a dark classroom" could not be attributed to state-derived authority as a matter of law. Rather, it held that the plaintiff's claim failed because her complaint was completely "devoid of any allegation" to that effect. *Jojola*, 55 F.3d at 494. As for *Haines*, the officers in that case deliberately tried to disguise the fact that they were police officers—they were pretending to be *robbers*, not police officers. 82 F.3d at 1505. The facts here are the opposite of those in *Haines*. Not only was Officer Pearson in uniform, he brought along his trainee, and was on official business related to his work as a police officer. Officer Pearson was thus deliberately trying to act as a *police officer*, in order to facilitate his sexual assault of Ms. Wardlaw. Thus, he used his "badge[] of authority, i.e., [his] position[] as a policem[a]n … to accomplish the [sexual assault]." *Id.* at 1508.

Finally, Olathe cites (at 13-14) to *T.G. v. Bd. of Cnty. Commissioners of Cnty. of Rio Arriba*, No. CV 19-1116 JFR/JHR, 2020 WL 6075662, at *17 (D.N.M. Oct. 15, 2020) for the

7

proposition that Officer Pearon's conduct in the moments leading up to his sexual assault of Ms. Wardlaw is irrelevant to the question of whether he acted under color of state law because the analysis is confined to "the nature of the act . . . at the moment in time that he committed it." But that is not the law, and the *T.G.* court itself did not cite any authority for such a narrow standard. Moreover, the court's conclusion ultimately turned on the fact that the parties were co-workers. As the *T.G.* court explained, "though the indicia of authority could certainly compel the conclusion that Defendant Gallegos was acting under color of state law . . . this case differs from typical cases" because the parties were "conducting their official duties as co-workers." *Id.* Here, on the other hand, Ms. Wardlaw was not a co-worker of Officer Pearson, and only Officer Pearson was conducting his official duties as a police officer.

Because Officer Pearson relied on his authority as a police officer to facilitate the assault and thus abused his power while carrying out the official duties entrusted to him by the state, Ms. Wardlaw has plausibly alleged that he acted under color of state law.

## CONCLUSION

Olathe's motion to dismiss should be denied as to Ms. Wardlaw's *Monell* claims.


Respectfully submitted,

*s/ Felipe Bohnet-Gomez*
Felipe Bohnet-Gomez
Azra Taslimi
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com
at@rmlawyers.com

*Counsel for Plaintiff*

8

**Certificate of Compliance**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*s/ Felipe Bohnet-Gomez*
Felipe Bohnet-Gomez
