## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.     23-CV-00834-DDD-NRN

AMY WARDLAW

     Plaintiff,

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER, a governmental entity;
TOWN OF OLATHE, municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

     Defendants.

---

### REPLY IN SUPPORT OF TOWN OF OLATHE'S MOTION TO DISMISS [ECF 65][1]

---

Defendant, Town of Olathe, by and through its attorneys at Nathan Dumm & Mayer P. C., hereby submits its Reply in support of its Motion to Dismiss, and in support states as follows:

### LEGAL ARGUMENT[2]

    *i.*    *Ms. Wardlaw fails to articulate how Pearson abused his authority as a government official.*

All parties to this suit agree that the key issue for equal protection and substantive due process is whether Pearson abused his authority as a government official – giving his conduct the necessary tinge of state action to bring it within the ambit of 42 U.S.C. § 1983. [*See* ECF 79, p.

---

[1] The Town's Motion to Dismiss Ms. Wardlaw's First Amended Complaint was filed on July 31, 2023 and is found at ECF 65.  Ms. Wardlaw's Response to the Town's Motion was filed on August 21, 2023 and is found at ECF 79.
[2] In light of Ms. Wardlaw's reference to and incorporation of information contained in her briefing involving other Defendants (See ECF 79, p. 2-6), to the extent applicable, the Town incorporates herein the replies of those Defendants on those arguments.

3]. It is functionally equivalent to the analysis of whether a government employee's actions were taken "under color of state law," as both analyses seek to determine whether conduct is purely private or involved the state authority held by an official.

Ms. Wardlaw gets this analysis wrong because she argues that Pearson's status as a police officer *facilitated* his alleged assault of her. In opposition, the Defendants explain that the conduct must carry with it a *coercive* element to render it an abuse of government power. While at first blush "facilitate" and "coercion" may appear to run a fine distinction, in practice the difference becomes obvious.

The case that best exemplifies this important distinction is *Jojola v. Chavez*, which almost all parties cite to in their respective briefs. 55 F.3d 488 (10th Cir. 1995). In *Jojola*, a janitor employed by a school district sexually assaulted a student on campus. *Id*. at 490. Certainly, the janitor's assault of a student was made easier because he was conferred access to the student body by virtue of his position. In other words, the janitor's employment by the school district brought him within close proximity to students and gave him access to the campus where the assault occurred – therefore facilitating the assault. But despite the egregious nature of the incident and the janitor's employment aiding in the assault, that was not enough to give rise to a constitutional violation. Instead, the Tenth Circuit held that § 1983 is only intended to deter state officials from 'using the badge of their authority' to deny citizens their federally protected rights." *Id*. at 493. Thus, a plaintiff must show "the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority…" *Id*. The Tenth Circuit's use of the word "badge" is not meant literally, but rather in the figurative context of a state official flexing his authority to coerce an individual into submission.

The necessary "badge of authority" and "nexus" become evident in any setting where a government official holds specific power over a third party, such as a principal who controls a subordinate teacher's employment, or a building inspector who holds the authority to determine whether buildings comply with the municipalities building codes. *Williams v. Berney*, 519 F.3d 1216, 1223 (10th Cir. 2008); *Johnson v. Martin*, 195 F.3d 1208, 1211 (10th Cir. 1999). In both instances the government official is utilizing their state power over another to cause an injury. *See Johnson*, 195 F.3d at 1211 ("most involve attempts by Mr. Martin to obtain sexual favors in exchange for favorable consideration of permit applications and favorable determinations of compliance with city codes."). This necessary leverage was missing in *Jojola*, in part because the plaintiff failed to plead it, but also because the janitor had no articulable authority over students, such as a state law conferring authority upon janitors to discipline or otherwise control students. He thus couldn't leverage any state-endowed authority to accomplish the assault; rather; he instead committed a private tort, albeit while on duty and working for a government employer.

This is where Ms. Wardlaw's argument falters. Yes, Pearson had access to WestCO because he was a police officer, which gave him some proximity to her and the other dispatchers. And if the Court accepts Ms. Wardlaw's allegations that she had to "facilitate communication and positive interaction" with law enforcement personnel, Pearson could develop a reason to speak with her about something work-related. [ECF 43, ¶¶ 48, 58-59]. But even accepting those allegations as true for purposes of this Motion, the final piece of state action is still missing, specifically the leveraging of Pearson's authority as a police officer to commit the assault. If, for example, Pearson had ordered her to enter a specific location to commit the assault, or threatened that she would be arrested if she failed to comply, such an order of a police officer would likely

show the requisite "nexus" to his authority as a state actor. But Pearson did not do that – he simply talked about her personal life and other agencies' protocols and then allegedly assaulted her. And while Pearson was in uniform and possessed a service weapon, Ms. Wardlaw did not allege – nor could she given the frequency with which she interacted with law enforcement – that she was forced to submit to his directives based on the mere fact that he was in uniform.  Under those facts, Pearson's status as a police officer may have arguably facilitated the assault, but he did not leverage his authority to accomplish it.

Ms. Wardlaw attempts to create a factual dispute by noting that "asking administrative questions about a computer system was within Pearson's job duties as a police officer." [ECF 79, p. 5]. Even accepting that as true, that job duty carries with it no coercive means by which to accomplish an assault – such as in *Johnson*, where the state actor could provide favorable outcomes on building permits, but only in exchange for sexual favors, thus demonstrating a real nexus between state authority and injury to a third party.

As one final comment, Ms. Wardlaw argues that the Court should largely disregard the Tenth Circuit's decision in *Woodward v. Worland*, 977 F.2d 1392 (10th Cir. 1992) because the court decided the case on clearly established grounds. The Town explicitly acknowledged the posture of the opinion, which is beside the point. After granting qualified immunity, the Court in *Woodward* went on to articulate that in the absence of "some authority that the wrongdoer has over the victim…it is difficult to establish that the abusive action was perpetrated 'under color of law' rather than as an essentially private act of sexual harassment." *Id*. at 1400. The Tenth Circuit has reaffirmed that holding in multiple cases, rendering Ms. Wardlaw's arguments invalid. *See Maestas v. Lujan*, 351 F.3d 1001, 1012 (10th Cir. 2003) ("Ms. Maestas may recover

in her § 1983 claim if Mr. Lujan either (1) was her supervisor or (2) exercised state authority over her."); *Apgar v. State*, 221 F.3d 1351, at *9 (10th Cir. 2000) (holding same) (unpublished).[3]

Because Ms. Wardlaw's Amended Complaint continues to lack any allegations demonstrating the required nexus between Pearson's authority as a police officer and his alleged assault of her, he cannot be liable on equal protection or due process grounds and so the claims against the Town must be dismissed.

ii.     *For similar reasons, Ms. Wardlaw cannot sustain a Fourth Amendment claim.*

With respect to her Fourth Amendment claim, the majority of briefing to date has focused on whether Pearson was acting pursuant to his law enforcement authority when he allegedly assaulted Ms. Wardlaw. Yet that is only part of the inquiry, with the remaining question being whether the allegations in the Amended Complaint give rise to an inference that Pearson was attempting to "seize Plaintiff's movements through means intentionally applied." [ECF 65, p. 10]. Ms. Wardlaw never addresses this requirement, instead simply focusing on the fact that a seizure may occur even in the absence of a law enforcement motive. [ECF 79, p. 5].

Yet it cannot be true that anytime a government official touches a private citizen the Fourth Amendment is implicated. Indeed, a law enforcement agent who taps a person on the shoulder to get their attention is certainly applying force to that individual, but no court would deem that contact subject to the Fourth Amendment, principally because there is no objective manifestation of intent to restrain that individual's freedom of movement. *See Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987) (holding Fourth Amendment was not implicated

---

[3] Ms. Wardlaw also cites *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023), yet the defendant in that case did not raise an argument to the Seventh Circuit regarding whether his conduct was under color of state law or otherwise infused with his state authority. It should thus come as no surprise that the Seventh Circuit did not pass upon that issue.

when agent tapped plaintiff on the shoulder) (citing *I.N.S. v. Delgado*, 466 U.S. 210, 218-19

(1984)). Obviously, the allegations in this case are far more serious, an alleged sexual assault,

but the analysis remains the same: does Pearson's conduct evidence an objective manifestation

of intent to restrain or take Ms. Wardlaw into custody? The answer is obviously no, as his intent,

according strictly to the allegations in the Amended Complaint, was to grope Ms. Wardlaw.

[ECF 43, ¶ 63].

A federal district court in Oregon considered similar circumstances in *Keyes v.

Washington County*, where a county employee charged with supervising convicts in a

community-service program allegedly groped the plaintiff. No. 3:15-cv-1987-AC, 2017 WL

3446256, at *3 (D. Or. Aug. 10, 2017). In analyzing the plaintiff's ensuing claim under the

Fourth Amendment, the court held that no "seizure" occurred because the alleged contact, *i.e.*,

groping, did not evidence any objective purpose other than the "initiat[ion] of unwanted sexual

contact." *Id*. at *4. Instead, "[f]or a Fourth Amendment seizure to occur through physical

contact, there must be restriction on freedom of movement beyond the instant of physical

contact." *Id*. The mere "instant of the touching alone" does not trigger the Fourth Amendment.

*Id*.

While Ms. Wardlaw may protest that a district court decision from Oregon is not

dispositive over this case, it is worth noting that the U.S. Supreme Court reaffirmed this basic

tenet of Fourth Amendment jurisprudence in *Torres v. Madrid*, which Ms. Wardlaw has cited

frequently in this case. [*See* ECF 76, p. 8; ECF 79, p. 6]. While the Court held in *Torres* that "the

slightest touch" could implicate the Fourth Amendment, it also stated that "[w]e stress, however,

that the application of the common law rule does not transform every physical contact between a

government employee and a member of the public into a Fourth Amendment seizure. A seizure requires the use of force *with intent to restrain*." 141 S. Ct. 989, 998 (2021) (emphasis in original). Thus, "force intentionally applied for some other purpose [will not] satisfy this rule." *Id*.

Reading the Amended Complaint in its entirety does not reveal any allegations that would give rise to an objective intent of Pearson to restrain Ms. Wardlaw. Rather, he allegedly groped and then released her. Under the rule affirmed in *Torres*, and as specifically applied in *Keyes*, Pearson's alleged conduct does not give rise to Fourth Amendment liability.

## CONCLUSION

Because Pearson's conduct does not give rise to constitutional liability under either the Fourth or Fourteenth Amendments, the Town cannot be liable under *Monell,* and for all of the reasons set forth in the Town's Motion, this reply, and the pertinent briefing of other Defendants, the Town must be dismissed, with prejudice.

DATED this 5th day of September, 2023.

> *s/Marni Nathan Kloster* _____
> Marni Nathan Kloster
> Nicholas C. Poppe
> NATHAN DUMM & MAYER P. C.
> 7900 E. Union Avenue, Suite 600
> Denver, CO 80237-2776
> Telephone: (303) 691-3737
> Facsimile: (303) 757-5106
> ATTORNEYS FOR DEFENDANT OLATHE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico' s Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2023 I electronically filed the foregoing **REPLY IN SUPPORT OF TOWN OF OLATHE'S MOTION TO DISMISS [ECF 65]** using the CM/ECF system which will send notification of such filing to the following:

Azra Taslimi
Felipe Bohnet-Gomez
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
at@rmlawyers.com
fbg@rmlawyers.com
*Attorneys for Plaintiff*

James Kadolph
Courtney B. Kramer
SGR, LLC
3900 E Mexico Avenue, Suite 700
Denver, CO 80210
(303) 320-0509
jkadolph@sgrllc.com
ckramer@sgrllc.com
*Attorney for Western CO Regional Dispatch Center*

Jonathan M. Abramson, Esq.
Yulia Nikolaevskaya, Esq.
Kissinger & Fellman, P.C.
3773 Cherry Creek N. Drive, Suite 900
Denver, CO 80209
jonathan@kandf.com
julie@kandf.com
(303) 320-6100
*Attorneys for Defendant Pacheco*

Peter H. Doherty
5251 DTC Parkway Suite 800
Greenwood Village, CO 80111
peter@lasaterandmartin.com
(303) 551-6280
*Attorney for Defendant Pearson*

David J. Goldfarb

M. Shelby Deeny
Berg Hill Greenleaf Ruscitti LLP
1217 Pearl Street
Boulder, CO 80302
djg@bhgrlaw.com
shelby.deeny@bhgrlaw.com
(303) 402-1600
*Attorney for Georgette Black*

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Nicholas C. Poppe
Attorneys for Defendant Town of Olathe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
MNathan@ndm-law.com
NPoppe@ndm-law.com