IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00834-DDD-NRN

AMY WARDLAW

       Plaintiff(s),

v.

WESTERN COLORADO REGIONAL DISPATCH CENTER,
a governmental entity;
TOWN OF OLATHE, a municipality;
DAVID PEARSON;
ROGELIO PACHECO; and
GEORGETTE BLACK;

       Defendant(s).

---

**GEORGETTE BLACK'S REPLY IN SUPPORT OF MOTION TO DISMISS**

---

### I.    REPLY ARGUMENT

**A.    The Montrose Police Department investigation cannot be ignored.**

Wardlaw cannot sidestep the very Montrose Police Department ("MPD") investigative materials ("Investigative Summary") (*see* Motion to Dismiss ("Motion") (#62), Exhibit A) on which she relies to bolster her claims set forth in the First Amended Complaint ("Complaint") (#43). *See* Response (#78), pp 2-3. For example, Wardlaw then details other instances of sexual harassment revealed in the Investigative Summary and even quotes what others told the MPD investigators. *Id.*, ¶ 76-107.  Wardlaw cannot retreat from her own references to these materials to contend the Court should ignore the statements contained within those materials. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is

referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.…If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.") (internal citations omitted). Thus, this Court may appropriately consider the Investigative Summary without converting the Motion to one under Rule 56.

**B.     Wardlaw has not shouldered her burden to overcome Black's qualified immunity.**

   **1.     Element not alleged: No constitutional violation.**

      **a.     No "state action" by Pearson.**

A police officer's mere presence does not transform the conduct of a private party into state action, triggering liability under Section 1983. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1450 (10th Cir. 1995). The fact that Pearson was in uniform when he allegedly harassed Wardlaw does not demonstrate the required nexus between Pearson's authority as a police officer and his alleged assaultive conduct. Black hereby incorporates the arguments on this point made by Pearson, Pacheco, and the Town in their respective replies as if fully set forth herein.

      **b.     No "affirmative link."**

         **i.     Personal involvement.**

Wardlaw faces several hurdles related to this threshold element. First, Wardlaw couches her claim against Black as one of a failure to supervise, train, or take some other action that would have prevented Pearson from harassing her in April 2021. Not only has the Tenth Circuit criticized this theory in circumstances involving an allegation of sexual assault, *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998), but Wardlaw's theory is based on the premise that Black witnessed

2

Pearson grab Wardlaw's knee in 2019, an incident that occurred before Black was promoted to sergeant. Compl., ¶¶ 26-30. At the time, Black was a part-time police officer, who worked full-time as a dispatcher for WestCo. *Id.*, ¶ 26. There is no allegation Black possessed any supervisory responsibilities at that time, nor does Wardlaw detail the scope of Black's authority related to Pearson, once she was promoted, beyond labeling her a supervisor. Compl., ¶¶ 332-34. There is not even an allegation that Black was responsible for any policy, supervision, or training that resulted in a violation of Wardlaw's rights. Merely labeling Black as a supervisor does not equate to a well-pled allegation that Black had any training or supervisory responsibility and does not nudge Wardlaw's claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (internal quotation omitted).

Second, seemingly understanding that Black cannot be responsible as supervisor for Pearson's alleged harassing behavior when she did not, in fact, hold any supervisory role at the time, Wardlaw points to a single naked averment that Black, at some unknown time, received another complaint from another anonymous dispatcher at WestCo about Pearson "making her uncomfortable." Compl., ¶ 106. There is not a description of what occurred such that anyone might be able to evaluate the severity of the alleged touching. This is the sort of "threadbare recital" and "mere conclusory statement" that does not suffice to plausibly allege that Black had some notice that Pearson was continuing to act inappropriately toward any females at WestCo, let alone Wardlaw. *Iqbal*, 556 U.S. at 678.

Third, the cases Wardlaw cites to demonstrate Black's "personal involvement" are distinguishable. *See* Response, pp 3-5. In *Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023), the Court *assumed* without deciding that supervisory liability could be predicated on a lack of

3

training or supervision. And in *Burke v. Regaldo*, 935 F.3d 960 (10th Cir. 2019), the Court analyzed supervisory liability based on training programs and policies in the context of in-custody medical care, which is very different than allegations of sexual assault or harassment in the employment setting.

Wardlaw attempts to collectivize Pearson's behavior to allege that he has a bad character, and claims that because of this, Black was required to do more. This is a far cry from alleging Black exercised "control or direction" or a "failure to supervise." *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (quotation omitted).

### ii. Causation.

Wardlaw's argument in support of causation – had Black done more than instruct Pearson not to touch anyone, if and when he visited WestCo, then Pearson may not have harassed Wardlaw – is the very sort of "whataboutism" that the Tenth Circuit concluded cannot establish supervisory liability. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 780 (10th Cir. 2013) ("Mere speculation that something would have been done to prevent" an injury is not sufficient to establish causation for supervisory liability).

"The requisite causal connection is satisfied if Defendants set in motion a series of events that Defendants knew or reasonably should have known would cause others to deprive Plaintiffs of their constitutional rights." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (internal quotation and alterations omitted). Here, the Complaint is devoid of any facts relating to causation. Wardlaw's argument presumes that because Pearson was a bad actor toward other women, that Black should have done more. Yet, the Complaint lacks any allegation that Black was aware of other complaints and that Wardlaw was being targeted by Pearson.

### iii. State of mind.

Even if the Court concludes the Complaint includes sufficient well-pled factual allegations to establish the first two elements of supervisory liability, the Complaint does not show Black was, at a minimum, deliberately indifferent to an otherwise inevitable violation of Wardlaw's constitutional rights.[1] Pearson's touching of Wardlaw in April 2021 was not an "obvious risk of harm." It is hardly clear that this sort of touching rises to the level of a constitutional violation, and there are no allegations that Black knew or should have known that Pearson ignored her directive, and that Wardlaw was his target. In the Investigative Summary, Wardlaw told investigators that she had not seen Pearson at WestCo in at least "two or three" months. (Motion, Exhibit A, pp 5 and 16). Further, the only other conduct that Wardlaw described was a time when "Pearson brushed against her breast when looking at a record on her computer together." *Id*, p 7. This occurred about six months prior to the April 2021 incident and Wardlaw "dismissed that contact as accidental in nature," without any indication she informed anyone, including Black. *Id.*

Even if the standard is deliberate indifference, Wardlaw has failed to meet that. Wardlaw has not alleged any "direct personal responsibility" that Black had in relation to Pearson's harassment. Wardlaw has not even alleged that Black had knowledge of Pearson's discriminatory purpose. Thus, Wardlaw has failed to establish the culpable state of mind.

---

[1] As previously argued, the applicable mental state in this context is unclear. *See* Motion, pp 8-9. To the extent Wardlaw now argues for an objective standard, the Tenth Circuit has not recognized the Fourth Amendment as an appropriate vehicle to pursue what is essentially a workplace harassment claim. *See* § I(B)(2)(iii).

### 2. Element not alleged: No clearly established law.

Wardlaw fails to point to precedent from the Tenth Circuit or Supreme Court, particularized to the facts of this case, establishing that her conduct as a supervisor violated clearly established equal protection, substantive due process, or even Fourth Amendment jurisprudence. *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (requiring the plaintiff to identify precedent that would put a reasonable official on notice that their supervisory conduct was held to have violated the Constitution).

#### i. Equal protection.

Wardlaw claims her Equal Protection claim is clearly established by first pointing to the unpublished opinion in *Burke v. New Mexico*, 696 F. App'x 325 (10th Cir. 2017). For the law to be "clearly established," there must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction. *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017). Unpublished opinions, like *Burke*, do not amount to clearly established law. *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) ("An unpublished opinion provides little support for the notion that the law is clearly established on a point."). Nevertheless, *Burke* does not support Wardlaw's position, because as here, the plaintiff in *Burke* failed to allege facts necessary to proceed on a claim of supervisory liability under an equal-protection theory. *Id.* at 330-31. In *Burke*, the plaintiff merely alleged that a supervisor had knowledge of a subordinate's discriminatory purpose, which was insufficient to survive a motion to dismiss. *Id.*

*Johnson v. Martin*, 195 F.3d 1208 (10th Cir. 1999) is, likewise, unhelpful. In *Johnson*, the city Building Code Director used his position to provide favorable outcomes on building permits

in exchange for sexual favors, demonstrating the requisite nexus between state authority and injury to a third party. *Id.*, 1218. The Tenth Circuit denied summary judgment to the employee's supervisors because the plaintiffs complained directly to one of the supervisors about the sexual misconduct and there was an issue of fact over the scope of the other supervisor's responsibility. *Id.,* 1220. Here, however, Wardlaw has not alleged that she complained directly to Black at any time. Black's knowledge of any harassing behavior was from 2019, when she was merely Pearson's colleague, and she reasonably responded by instructing him not to touch anyone. Moreover, the Complaint merely labels Black as Pearson's supervisor in conclusory fashion without pleading any of her responsibilities. If anything, Wardlaw's claims are based on the sort of negligent conduct that *Johnson* recognizes cannot "satisf[y] the scienter requirement of § 1983." *Id.*, 1219.

Again, Wardlaw tries to collectivize Pearson's behaviors in different contexts other than what had occurred at WestCo to claim that Black's response was inadequate. This is a far cry from demonstrating then-existing equal protection jurisprudence was "particularized to the facts of the case" such that a reasonable official in Black's position as a supervisor would have known her conduct would affect an equal protection violation. *Perry*, 892 F.3d at 1124.

### ii. Substantive due process.

Nor does Wardlaw carry her burden on the clearly established law prong of qualified immunity related to her substantive due process theory – indeed, she appears to concede the point. Wardlaw points to *Abeyta v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253 (10th Cir. 1996), *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999), *Johnson*, again, and *Keith v. Koerner*, 707 F.3d 1185 (10th. 2013) in support of her effort to demonstrate the state of substantive

7

due process law, in the supervisory context, was beyond debate in April 2021. *See* Response, pp 8-9. But she concludes her analysis by recognizing none of these cases demonstrate, beyond debate, that Black's alleged conduct violated substantive due process principals, instead stating the aforementioned decisions "apply with obvious clarity" to the alleged circumstances. *Id.*, p 9. Black's responsibilities related to Pearson's alleged groping on a third-party is hardly the sort of particularly egregious misconduct that relieves Wardlaw of demonstrating the law was clearly established here. *Surat v. Klamser*, 52 F.4th 1261, 1276 (10th Cir. 2022) (plaintiffs may not identify their claim through "extremely abstract rights" because this would convert the rule of qualified immunity "into a rule of virtually unqualified liability.").

Wardlaw offers no discussion of how *Johnson*, discussed above, and *Murrell* – both equal protection cases – would have counseled Black in her supervisory capacity in the substantive due process context. Indeed, it is questionable whether *Murrell* is even applicable given the Court there discussed supervisory liability in the context of "supervisory authority over students" given the bad actor was a student, not a school employee *Id*., 1243-44 and 1251. In any event, the Complaint here hardly includes the sort of facts demonstrating an understanding of the risk the student posed – repeated warnings to school staff, a history of prior sexual misconduct, outcry by the victim to her teachers, and the teachers counseling the victim not to speak about her being sexually assaulted with her mother. *Id*., 1244. Moreover, it is improper to point to authority related to a separate constitutional theory in support of a clearly established substantive due process right. *See, e.g., Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (discussing differing standards between equal protection and substantive due process). For this same reason, *Keith* is unhelpful

8

given the Tenth Circuit evaluated supervisory liability for an Eight Amendment violation in a detention setting, which is very different from the claim here.

*Abeyta* is also unhelpful since it addresses circumstances of individual, and not supervisory, liability. 77 F.3d at 1254, f. 2. Finally, none of these cases address the particularized question in this case – whether Black was obligated to do something more than instructing Pearson he could not go to the dispatch center and not to touch dispatchers if he had to visit. *Perry*, 892 F.3d at 1123.

### iii. Fourth Amendment.

Wardlaw fails to present a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits to save her Fourth Amendment-based supervisory liability theory. *Pompeo*, 852 F.3d at 981. Instead, she relies on a single Seventh Circuit case from 2023–*Hess v. Garcia*, 72 F.4th 753 (7th Cir. 2023)–that holds an officer's sexual assault is an unreasonable seizure under the Fourth Amendment. Because the *Hess* opinion post-dates the alleged conduct her and is merely a single out-of-circuit decision, it does not suffice to show the law was clearly established. Moreover, *Hess* says nothing about a supervisor in the Fourth Amendment context.  !

Further, *Torres v. Madrid*, 141 S.Ct. 989 (2021) does not support Wardlaw's claim. The Supreme Court's "narrow" holding in *Madrid* is that "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Id.* at 999, 1003. The Supreme Court clarified: "A seizure requires the use of force *with intent to restrain*. Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy this rule. In this opinion, we consider only force used to apprehend." *Id.*, 998

(emphasis in original) (citation omitted). Notably, *Madrid* is silent regarding a supervisor's responsibilities in the Fourth Amendment context.

Finally, Wardlaw, again, resorts to characterizing this as an instance of "obvious clarity" such that Wardlaw is relieved of her burden of pointing to prior Fourth Amendment jurisprudence and then abruptly switches gears to contend Black was obligated to intervene to prevent Pearson's allegedly unconstitutional conduct. *See* Response, p 10.  As already discussed, it was not beyond debate in this Circuit that the Fourth Amendment even applies to Wardlaw's claim. Nor do *Webb v. Thompson*, 643 F. App'x 718 (10th Cir. 2016) or *Burke v. Glanz*, 292 F. Supp 3d 1235 (N.D. Okla. 2017), an unpublished decision and a district court decision, serve to clearly establish the Fourth Amendment applies to Black's alleged supervisory role in this case.

WHEREFORE, Black requests this Court dismiss Wardlaw's supervisory liability claim against her with prejudice.

Respectfully submitted this 19th day of September, 2023.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ David J. Goldfarb*
_____
David J. Goldfarb
M. Shelby Deeney
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  djg@bhgrlaw.com

*Attorney for Defendant Georgette Black*

**CERTIFICATE OF COMPLIANCE**

    I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), containing 2645 words, inclusive of footnotes.

*s/ David J. Goldfarb*
_____
David J. Goldfarb

## CERTIFICATE OF SERVICE

      I hereby certify that on this 19th day of September, 2023, I electronically filed the foregoing **GEORGETTE BLACK'S REPLY IN SUPPORT OF HER MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

Azra Taslimi
Felipe S. Bohnet-Gomez
Rathod | Mohamedbhai LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
at@rmlawyers.com
fbg@rmlawyers.com

Marni Nathan Kloster
Nicholas C. Poppe
Nathan, Dumm & Mayer, PC
7900 East Union Avenue, Suite 600
Denver, CO 80237
mkloster@ndm-law.com
npoppe@ndm-law.com

Jonathan Abrahamson
Julia Nikolaevskaya
Kissinger & Fellman, PC
3773 Cherry Creek North Drive, Suite 900
Denver, CO 80209
jonathan@kandf.com
julie@kandf.com

Peter H. Doherty
Lasater & Martin, P.C.
5251 DTC Parkway
Suite 800
Greenwood Village, CO 80111
Peter@LasaterandMartin.com

Eric M. Ziporin
Courtney B. Kramer
James Kadolph
SGR, LLC
3900 E. Mexico Avenue, Suite 700
Denver, CO 80210
eziporin@sgrllc.com
ckramer@sgrllc.com
jkadolph@sgrllc.com

                *s/ Shoshannah Ebersole-Raptor*
                _____
                Shoshannah Ebersole-Raptor